UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **STERLING SUFFOLK RACECOURSE, LLC,**<br><br>v.<br><br>**WYNN RESORTS, LTD, et al.**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)  Civil No: 18-CV-11963-PBS<br>)<br>)<br>)<br>) |

### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANT FBT EVERETT REALTY LLC'S MOTION TO DISMISS

The federal complaint that Sterling Suffolk Racecourse ("Sterling") filed is frivolous as a matter of law. Not only should the Court dismiss the complaint without leave to amend, but it also should sanction Sterling for filing a complaint whose only federal claims are squarely foreclosed by Supreme Court and First Circuit precedent, and whose state law claims have no independent basis for federal jurisdiction.[1]

### INTRODUCTION

FBT Everett Realty LLC ("FBT") is a Massachusetts limited liability company that in 2015 sold to Wynn Resorts Limited ("Wynn") the 33-acre parcel of land in Everett on which Wynn is currently constructing a luxury casino hotel. FBT's transaction with Wynn was the subject of both substantial local news coverage and a high-profile federal wire fraud prosecution against current FBT members Anthony Gattineri and Dustin DeNunzio and former FBT member Charles

---

[1] After being served with the complaint, undersigned counsel notified Sterling's counsel of record that, unless Sterling withdrew the complaint, they would seek sanctions under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927. Sterling nevertheless refused to dismiss the complaint against FBT. FBT fully intends to move the Court for sanctions, including attorneys' fees and costs, after the complaint is dismissed.

1

Lightbody—a prosecution that resulted in acquittals on all counts as to all defendants, after less than five hours of jury deliberations, because the government failed to prove a fraud of any kind.[2] *See United States v. DeNunzio et al.*, No. 14-cr-10284-NMG (D. Mass.).

Sterling's complaint might at first blush seem like a copycat of the government's failed wire fraud prosecution, but it is in fact substantially different. The government's indictment alleged that Wynn was *the victim* of FBT's attempted real estate fraud, whereas Sterling's complaint alleges that Wynn actually was FBT's *co-conspirator* in a scheme to deceive the Massachusetts Gaming Commission ("Gaming Commission"). Sterling, which is still smarting over the fact that the Gaming Commission awarded Wynn the coveted casino license that Sterling had been pining for, is now seeking to use the FBT members' wire fraud acquittals as the premise of an absurd RICO conspiracy theory that Sterling hopes will result in a $3 billion treble damages jackpot.

The Court would be well justified in concluding that Sterling's complaint is implausible. After all, the complaint necessarily requires the Court to believe that Wynn and its executives, without any legal repercussions whatsoever (*e.g.*, perjury charges), purposefully fooled the United States Attorney's Office into thinking that Wynn was a victim of a massive real estate fraud perpetrated by FBT, when in reality it was FBT's co-conspirator in a scheme to deceive the Gaming Commission. Implausible complaints, of course, must be dismissed. *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

In addition to the complaint's sheer implausibility, there are numerous other reasons why the Court should dismiss the complaint with prejudice. But, so as not to burden this Court with

---

[2] Undersigned counsel from Ropes & Gray LLP had the honor of serving as Mr. DeNunzio's criminal defense counsel in that prosecution.

unnecessary briefing, FBT focuses this memorandum of law on the three simplest, most straightforward reasons why the Court should dismiss Sterling's complaint with prejudice: First, the RICO claims fail as a matter of law because the complaint fails to allege any actual "racketeering activity," and this defect cannot possibly be cured through amendments to the complaint. Second, even leaving their lack of substantive merit aside, the RICO claims are incurably time barred. Finally, once the RICO claims are dismissed, the state law claims lack any independent basis for continued federal jurisdiction, though they also clearly fail on the merits.

**ARGUMENT**

**I.     The RICO Claims Are Incurably Defective as a Matter of Law, Because None of the Conduct Alleged in the Complaint Constitutes "Racketeering Activity."**

"Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Miranda v. Ponce Federal Bank*, 948 F.2d 41, 44 (1st Cir. 1991). "The very pendency of a RICO suit can be stigmatizing and its consummation can be costly." *Id.* For this reason, courts review civil RICO complaints with "particular care," in order to "prevent[ ] abusive or vexatious treatment of defendants." *Id.* A plaintiff cannot just waltz into federal court, allege a scheme of unsavory conduct, and "tack[ ] on the self-serving conclusion that the conduct amounted to racketeering." *Id.* "Racketeering activity" is a statutory term of art, and 18 U.S.C. § 1961(1) sets forth an exhaustive list of conduct that constitutes "racketeering activity." *See Beck v. Prupis*, 529 U.S. 494, 497 n. 2 (2000); If particular conduct does not fit within § 1961(1), then such conduct is not "racketeering activity" and, as a matter of law, cannot provide the basis for a RICO claim. *See, e.g.*, *United States v. Latorre-Cacho*, 874 F.3d 299, 306-307 (1st Cir. 2017) (reversing RICO conviction where judge's instruction allowed jury to convict based on unlawful acts not within § 1961(1)'s exhaustive list); *Miranda*, 948 F.2d at 44 (holding that plaintiff's "jerry-built" civil

RICO complaint failed as a matter of law because the conduct alleged in the complaint, even if proven true, would not constitute "racketeering activity").

To see that Sterling's RICO claims are totally devoid of legal merit, and far more worthy of sanctions than this Court's time and attention, the Court needs only to scrutinize paragraphs 96(a)-(d) of the complaint. That is the paragraph in the complaint where Sterling seeks to explain how the conduct alleged in the complaint constitutes "racketeering activity"—*i.e.*, a RICO predicate act—under § 1961(1).

A.   *The Alleged Massachusetts Gaming Act Predicate*—Paragraph 96(a) alleges that FBT, Wynn, and Wynn executives made "false, misleading, and/or omissive statements" to the Gaming Commission in connection with Wynn Resorts' casino license application. Paragraph 96(a) says that this conduct constitutes a felony violation of the Massachusetts Gaming Act. *See* Complaint, ¶ 96(a). Sterling is right that lying to the Gaming Commission on a license application is a felony under Massachusetts law. But it is not a "racketeering activity" under § 1961(1).

Although the complaint is silent in this regard, Sterling's theory must be that lying to the Gaming Commission on a casino license application is an offense "involving . . . gambling . . . ." 18 U.S.C. § 1961(1)(A). That theory, however, is completely unsustainable. The "test for determining whether" particular conduct "fit[s] into" § 1961(1)(A) is whether it involves "a type of activity generally known or characterized in the proscribed category . . . ." *United States v. Forsythe*, 560 F.2d 1127, 1137 (3d Cir. 1977); *see also Roma Constr. Co. v. Russo*, 96 F.3d 566, 580 (1st Cir. 1996) (Lynch, J., concurring) (recognizing this principle of RICO law). The question, then, is whether the process of applying for a casino license involves activity "generally known or characterized" as "gambling." It clearly does not. Applying for a casino license involves filling out paperwork and lobbying the relevant state agencies, not "gambling." *See United States v.*

*Mark*, 460 F. App'x 103, 107 (3d Cir. 2012) (holding that "gambling" for purposes of § 1961(1)(A) means "'the act or practice of betting,' or 'the act of risking something on an uncertain event'" (quoting Webster's Dictionary)).

To be sure, the Commonwealth's gaming license application process has some logical relationship with gambling, inasmuch as an awarded license grants the licensee the right to operate a casino gaming establishment.  But this does mean the license application process, or making false or misleading statements in furtherance of a license application, *involves* gambling for purposes of § 1961(1)(A).  The court's decision in *United States v. Genova*, 187 F. Supp. 2d 1015 (N.D. Ill. 2002), is instructive in this regard.  In *Genova*, the government proved at trial that the defendant, the mayor of a Calumet City, Illinois, filed a false statement of economic interest in violation of Illinois law.  *Id.* at 1018.  The government's RICO theory was that, because the defendant filed the false statement "with the intent of concealing a [felony] bribery scheme," the filing of the false statements itself constituted an "act involving bribery" for purposes of § 1961(1)(A).  *Id.* at 1021 (citations omitted).  The court rejected the government's theory, distinguishing "acts of bribery" from "acts committed to conceal bribery" and holding that only the former implicates § 1961(1)(A).  *Id.*  In other words, the defendant's false statement did not constitute an "act involving bribery" merely because it had some logical connection with a bribery scheme.

Consistent with *Genova*, Sterling cannot transform the FBT/Wynn enterprise's alleged false and misleading statements to the Massachusetts Gaming Commission into "racketeering activity," actionable under RICO, merely by showing some attenuated relationship with Wynn's opening of a future casino hotel.

**B.     *The Alleged Mail and Wire Fraud Predicate***—Paragraph 96(b) alleges that FBT, Wynn, and Wynn executives conspired to deceive the Gaming Commission into issuing Wynn a license to operate a casino.[3] Sterling says this alleged conspiracy violated the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343. Sterling is correct that wire fraud is a "racketeering activity" under § 1961(1). But the Supreme Court and the First Circuit have held that a scheme to deceive a state agency into issuing a commercial license does not implicate the federal mail or wire fraud statutes. *See Cleveland v. United States*, 531 U.S. 12 (2000) (holding that a scheme to deceive a state gaming commission into issuing a video poker machine license is not a mail fraud); *United States v. Berroa*, 856 F.3d 141 (1st Cir. 2017) (holding that, per *Cleveland*, a scheme to deceive a state medical board into issuing medical licenses is not a mail fraud, even if the ultimate purpose is to use the "fraudulent licenses to obtain payment for medical services" provided to patients). That is because a violation of the mail and wire fraud statutes requires a deprivation of "property," and a state-issued gaming license as a matter of law does "not rank as 'property,' for purposes of [the mail and wire fraud statutes], in the hand of the official licensor." *Cleveland*, 531 U.S. at 15. Thus, the alleged scheme to deceive the Gaming Commission cannot qualify as a RICO mail or wire fraud.

**C.     *The Alleged Travel Act Predicate***—Paragraph 96(c) alleges that FBT, Wynn, and Wynn executives violated the Travel Act, 18 U.S.C. § 1952. Sterling is correct that violations of the Travel Act constitute "racketeering activity" § 1961(1). But paragraph 96(c) does not describe any actual violations of the Travel Act. The Travel Act prohibits the use of interstate travel or the

---

[3] Sterling alleges that this scheme proximately caused Sterling economic injury, because the Gaming Commission would have issued the license to Sterling absent the defendants' deception. Although FBT agrees with Wynn's argument that Sterling's theory of causation is implausible, *see* Dkt. #17, at p. 15, the Court need not address that issue to dismiss the complaint with prejudice.

6

interstate mails in furtherance of "unlawful activity," which is a statutory term of art defined by § 1952(b).  Paragraph 96(c) alleges that FBT, Wynn, and Wynn executives traveled and mailed things between Nevada and Massachusetts, in furtherance of violations of the Massachusetts Gaming Act.  But violations of the Massachusetts Gaming Act do not satisfy § 1952(b)'s definition of "unlawful activity," and an alleged Travel Act violation thus cannot be predicated on alleged violations of the Massachusetts Gaming Act.

Section 1952(b) defines "unlawful activity" as "any business enterprise involving gambling . . . offenses in violation of the laws of the State in which they are committed or of the United States[.]"  18 U.S.C. § 1952(b).  For an alleged state law offense to satisfy this definition, the offense must involve conduct "that can be described generically as gambling."  *United States v. Barbeito*, No. 2:09-cr-00222, 2010 U.S. Dist. LEXIS 55688, at *118 (W.D. Va. June 3, 2010) (citing *United States v. Nardello*, 393 U.S. 286, 295-296 (1969)).  As with the alleged predicate acts described in Paragraph 96(a), it is not enough that the alleged unlawful activity has some logical connection to gambling.  Sterling's complaint does not allege that FBT, Wynn, or Wynn executives engaged in "gambling" in violation of Massachusetts state law.  Instead, the complaint alleges that Wynn applied for a casino license, with the alleged offense being that FBT, Wynn, and Wynn executives violated the Travel Act by facilitating false statements to the Gaming Commission via travel and mail between Nevada and Massachusetts.  That is not a "gambling" offense.

*D.     The Alleged Extortion Predicate*—Finally, paragraph 96(d) alleges that former FBT member Charles Lightbody assaulted a resident of Revere to deter him from participating in a pro-Sterling rally and voting in favor of Sterling's interests in a local election.  Sterling labels this alleged assault "extortion."  Sterling is correct that extortion is a "racketeering activity" under

§ 1961. But the Supreme Court has held that physical assault constitutes extortion for purposes of § 1961(1) only if the intent was "to obtain [the victim's tangible] property." *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 410 (2003). Thus, no matter how despicable, Mr. Lightbody's alleged assault of the victim cannot qualify as RICO extortion.

**II.     Sterling's RICO Claims Are Time-Barred.**

Although, as demonstrated above, Sterling's complaint does not come close to alleging any, let alone a "pattern," of "racketeering activity," Sterling's RICO claims are also stale. Civil RICO claims are subject to a four-year statute of limitations. *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* 483 U.S. 143, 156 (1987). A civil RICO cause of action accrues, and the limitations period begins to run, as of the date the plaintiff knew or should have known of its injury, regardless of whether the alleged pattern of racketeering activity had yet to be discovered. *Rotella v. Wood*, 528 U.S. 549, 554 (2000); *see also Skwira v. United States*, 344 F.3d 64, 75 (1st Cir. 2003) (holding that a civil RICO claim "does not accrue when the plaintiff learns of the conspiracy, but, rather, when he learns of his injury") (citation omitted). The First Circuit has held that, where the plaintiff's RICO claim is that the defendant's alleged racketeering activity caused the plaintiff to lose a competitive bidding process, the plaintiff's RICO claim (if any) accrues as of the date the plaintiff discovered it lost. *See Lares Group, II v. Tobin*, 221 F.3d 41, 44–45 (1st Cir. 2000).

Here, Sterling understood that it lost the contest for the Region A casino license by no later than September 16, 2014, which is when the Gaming Commission issued its public vote to award the license to Wynn. Sterling's complaint, filed on September 17, 2018, is thus at least one day too late.

**III. The Complaint's State Law Claims Should Be Dismissed for Lack of Federal Jurisdiction, But They Irreparably Fail on the Merits as Well.**

FBT and Sterling are both Massachusetts residents. Thus, diversity does not provide an independent basis for federal jurisdiction over Sterling's state law claims. The only basis for federal jurisdiction over the state law claims is supplemental jurisdiction under 28 U.S.C. § 1367. The Supreme Court has made clear that federal district courts should decline to exercise supplemental subject matter jurisdiction over state law claims where the complaint's federal claims are "completely devoid of merit[,]" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citation omitted); *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995). Where, as should be the case here, federal claims are disposed of early in the proceedings, dismissal of pendent state claims is all but mandatory. *See Gibbs*, 383 U.S. at 726 ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."); *Martinez v. Colon*, 54 F.3d 980, 990 (1st Cir. 1995) (affirming the dismissal without prejudice of pendent claims when the district court determined "far in advance of trial that no legitimate federal question existed") (citation omitted).

As demonstrated above, to say that Sterling's RICO claims are completely devoid of merit is an understatement, thus dooming the state law claims for lack of subject matter jurisdiction. If, however, the Court would prefer to kill Sterling's state law claims on the merits, so that Sterling does not have an opportunity to saddle a Massachusetts state court judge with them, there are plenty of grounds on which to do so.

With respect to the complaint's ch. 93A claim, the court's decision in *Mastoran Restaurants v. Commonwealth of Massachusetts Division of Capital Assets Management*, No. 001998BLS, 2001 WL 1811963 (Mass. Super. Ct. Dec. 31, 2011) (van Gestel, J.), is directly on point. In that case, Judge van Gestel explained that ch. 93A requires the plaintiff to show that it

was in a "'commercial transaction'" with the defendant, and he held that a plaintiff is not "involved in a commercial transaction" with the defendant merely because they are competitors for the same contract. *Id.* at *5 (citation omitted).

The tortious interference claims should be dismissed with prejudice for an equally simple reason: they are indisputably time-barred. Claims for tortious interference under Massachusetts law are subject to a three year statute of limitations which runs from the date of injury. G.L. c. 260, § 2A; *Stark v. Advanced Magnetics, Inc.*, 50 Mass. App. Ct. 226, 232 (2000). Even if Sterling attempts to argue that its injury did not occur until the Gaming Commission formally awarded the license to Wynn on September 17, 2014, rather than when it publicly announced its decision to make that award a day earlier on September 16, 2014, Sterling missed this shorter statute of limitations by nearly a full year.[4]

---

[4] Clearly, neither the discovery rule nor any other equitable tolling principle applies here where Sterling's claims for tortious interference are based on facts and alleged facts that were in the public record even before the Commission voted to award the license to Wynn.

**CONCLUSION**

For the reasons set forth above, and the reasons set forth in the other defendants' memoranda of law in support of their respective motions to dismiss, the Court should dismiss Sterling's complaint with prejudice. FBT hereby reserves the right to seek attorney's fees and sanctions under Federal Rule of Civil Procedure 11, Federal Rule of Civil Procedure 54(d)(2), and 28 U.S.C. § 1927.

DATED: January 18, 2019                    Respectfully submitted,

/s/ Aaron M. Katz_____
Joshua S. Levy (BBO# 563017)
Joshua.Levy@ropesgray.com
Aaron M. Katz (BBO# 662457)
aaron.katz@ropesgray.com
Ropes & Gray LLP
800 Boylston Street
Boston, MA 02199
Telephone: (617) 951-7000

Christopher Weld, Jr.
cweld@toddweld.com (BBO# 522230)
Christian G. Kiely (BBO# 684308)
ckiely@toddweld.com
Todd & Weld LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2600

## **CERTIFICATE OF SERVICE**

    I, Aaron M. Katz, hereby certify that, on January 18, 2019, true and accurate copies of the foregoing were served on counsel for all parties through ECF.

                                  /s/ Aaron M. Katz
                                  Aaron M. Katz