UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STERLING SUFFOLK RACECOURSE, LLC, | |
| Plaintiff, | Civil Action No. 1:18-cv-11963-PBS |
| v. | REQUEST FOR ORAL ARGUMENT |
| WYNN RESORTS, LTD, et al., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF KIMMARIE SINATRA'S MOTION TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    MS. SINATRA INCORPORATES THE ARGUMENTS SET FORTH IN THE
       MOTIONS FILED BY THE WYNN PARTIES, FBT EVERETT, AND STEVE
       WYNN ............................................................................................................... 2

III.   ARGUMENT ...................................................................................................... 4

    A.   Plaintiff Fails to Allege the Existence of a Section 1962(c) RICO
       Enterprise ................................................................................................. 5

        1.   Plaintiff Fails to Allege that the Wynn Defendants Formed an
           Association-in-Fact Enterprise with FBT .................................. 5

        2.   Plaintiff Fails to Allege that Wynn MA is an Enterprise Distinct
           from its Corporate Parent, Wynn Resorts, Limited .................... 8

        3.   The Third Claim for Relief Must be Dismissed because Plaintiff
           Fails to Plead a Viable Enterprise ............................................. 9

    B.   The Claims Against Ms. Sinatra Must Also Be Dismissed Under Rule 9(b) ...... 10

        1.   The Amended Complaint's RICO Claims Against Ms. Sinatra Are
           Legally Deficient Under Rule 9(b) ......................................... 11

        2.   The Amended Complaint's State Law Claims Against Ms. Sinatra
           Are Not Specifically Pled ........................................................ 14

IV.    CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Private Line Servs., Inc. v. E. Microwave, Inc.*,
  980 F.2d 33 (1st Cir. 1992) .................................................................................15

*Bessette v. Avco Fin. Servs., Inc.*,
  230 F.3d 439 (1st Cir. 2000) ..................................................................................9

*Compagnie De Reassurance D'Ile de France v. New England Reinsurance Corp.*,
  57 F.3d 56 (1st Cir. 1995) ......................................................................................8

*Deane v. Weyerhaeuser Mortg. Co.*,
  967 F. Supp. 30 (D. Mass. 1997) ........................................................................8, 9

*Escude Cruz v. Ortho Pharm., Corp.*,
  619 F.2d 902 (1st Cir. 1980) ................................................................................11

*Fitzgerald v. Chrysler Corp.*,
  116 F.3d 225 (7th Cir. 1997) (Posner, J.) ..............................................................5

*Gen. Elec. Co. v. Lyon*,
  894 F. Supp. 544 (D. Mass. 1995) .........................................................................8

*Home Orthopedics Corp. v. Rodriguez*,
  781 F.3d 521 (1st Cir. 2015) ................................................................................12

*Hunneman Real Estate Corp. v. Norwood Realty, Inc.*,
  54 Mass. App. Ct. 416 (2002) ........................................................................ 14-15

*Libertad v. Welch*,
  53 F.3d 428 (1st Cir. 1995) ................................................................................5, 7

*Liberty Mut. Ins. Co. v. Diamante*,
  138 F. Supp. 2d 47 (D. Mass. 2001) ....................................................................12

*In re Lupron Mktg. & Sales Practices Litig.*,
  295 F. Supp. 2d 148 (D. Mass. 2003) .................................................................5, 6

*Mastoran Rests., Inc. v. Commonwealth Div. of Capital Asset Mgmt.*,
  No. 001998BLS, 2001 WL 1811963 (Mass. Super. Ct. Dec. 31, 2001) ................14

*Metro. Prop. & Cas. Ins. Co. v. Savin Hill Family Chiropractic, Inc.*,
  C.A. No. 15-12939-LTS, 2016 WL 11004383 (D. Mass. June 15, 2016).............10

*Miranda v. Ponce Fed. Bank*,
   948 F.2d 41 (1st Cir. 1991) ...................................................................................8

*Nat'l Grp. for Commc'ns & Computers, Ltd. v. Lucent Techs. Inc.*,
   No. 03 Civ. 6001 (NRB), 2004 WL 2903745 (S.D.NY. Dec. 15, 2004) ................................11

*New England Data Servs., Inc. v. Becher*,
   829 F.2d 286 (1st Cir. 1987) .................................................................................11

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   263 F. Supp. 2d 172 (D. Mass. 2003) .......................................................................6

*Rhodes v. Consumers' Buyline, Inc.*,
   868 F. Supp. 368 (D. Mass. 1993) .......................................................................9, 10

*Rhone v. Energy N., Inc.*,
   790 F. Supp. 353 (D. Mass. 1991) ..........................................................................11

*Sebago, Inc. v. Beazer E., Inc.*,
   18 F. Supp. 2d 70 (D. Mass. 1998) .........................................................................11

*Sherman v. Clear Channel Outdoor, Inc.*,
   889 F. Supp. 2d 168 (D. Mass. 2012) ......................................................................14

*Szalla v. Locke*,
   421 Mass. 448 (1995) .........................................................................................14

*TLH Int'l v. Au Bon Pain Franchising Corp.*,
   Civ. A. No. 86-2061-MA, 1986 WL 13405 (D. Mass. Nov. 13, 1986) .................................11

*U1it4less, Inc. v. Fedex Corp.*,
   871 F.3d 199 (2d Cir. 2017), cert. denied, 138 S. Ct. 1559, 200 L. Ed. 2d 743
   (2018) .............................................................................................................9

*United States v. Cianci*,
   378 F.3d 71 (1st Cir. 2004) ...................................................................................5

**Statutes & Rules**

18 U.S.C. § 1962 ................................................................................................ *passim*

Federal Rules of Civil Procedure 9(b) ...................................................................... *passim*

## I.     __INTRODUCTION__

Ms. Sinatra, the former General Counsel of Wynn Resorts, Limited, respectfully asks the Court to dismiss the Amended Complaint.  Sterling Suffolk Racecourse, LLC ("Sterling") alleges that Wynn Resorts, Limited, its subsidiary Wynn MA, LLC, and its executive officers conspired with each other and FBT Everett Realty, LLC ("FBT") to conceal information about FBT's ownership history and Steve Wynn's sexual misconduct from the Massachusetts Gaming Commission ("MGC") during Wynn MA's bid for a Region A Gaming License.[1]  Despite the salaciousness of its allegations, the Amended Complaint again fails to plead valid claims under the federal RICO statute or state law, much less make particularized allegations against Ms. Sinatra.

A host of flaws in the Amended Complaint have been capably addressed by the other Defendants in this case, and Ms. Sinatra adopts and incorporates those arguments.  So as to not burden the Court with unnecessary briefing, Ms. Sinatra focuses this memorandum on arguments that have not yet been addressed by the other Defendants.

First, the Amended Complaint utterly fails to allege the existence of any RICO enterprise under 18 U.S.C. § 1962(c).  As in its original complaint, Plaintiff fails to plead that an association-in-fact enterprise existed through which the Wynn Entities and FBT coordinated their activities.  Plaintiff's new fallback position – that Wynn Resorts, Limited conspired solely with its employees and subsidiaries, including Wynn MA – fairs no better, because it is established law that a RICO defendant must be distinct from the alleged RICO enterprise. Because the Amended Complaint does not plead a viable RICO enterprise, all three of Plaintiff's RICO claims must dismissed, as a matter of law.

---

[1] Wynn Resorts, Limited ("Wynn Resorts") and Wynn MA, LLC ("Wynn MA") will collectively be referred to as the "Wynn Entities," unless otherwise noted.

Second, even if the Amended Complaint were to overcome these dispositive legal hurdles, it still fails to state a claim as to Ms. Sinatra because it does not specifically allege she was involved in the alleged fraud, as required by Rule 9(b) of the Federal Rules of Civil Procedure.  As before, the Amended Complaint is founded on allegations regarding "Defendants" or the "Wynn Defendants," but when those non-specific allegations are disregarded, as they must be for purposes of this Motion, what remains are a handful of allegations that describe Ms. Sinatra performing her duties as Wynn Resorts, Limited's General Counsel.  Other than the unsupported and utterly conclusory accusation that she intentionally omitted information on Wynn MA's application to the Gaming Commission, there are no specific allegations that establish she did anything in furtherance of any purported scheme.

For those reasons, and as further explained below, the Amended Complaint does not state a claim against Ms. Sinatra under RICO or Plaintiff's state law claims, and it should now be dismissed as to her, with prejudice.

## II.   MS. SINATRA INCORPORATES THE ARGUMENTS SET FORTH IN THE MOTIONS FILED BY THE WYNN PARTIES, FBT EVERETT, AND STEVE WYNN

Ms. Sinatra adopts and incorporates by reference the arguments contained in the Motion to Dismiss the Amended Complaint and supporting memorandum (ECF Nos. 72 and 73) filed by FBT (the "FBT Motion").  Ms. Sinatra further adopts and incorporates by reference the arguments contained in the Motion to Dismiss the First Amended Complaint, the Special Motion to Dismiss the First Amended Complaint, and supporting memoranda filed by Wynn Resorts Limited, Wynn MA, and Matthew Maddox (the "Wynn Motion" and "Wynn Special Motion," respectively), and the Motion to Dismiss the Amended Complaint and supporting memorandum filed by Stephen Wynn (the "SW Motion"), filed contemporaneously with this Motion.  As demonstrated in the memoranda in support of Defendants' respective motions, Plaintiff's

Amended Complaint should be dismissed as a matter of law for multiple independent reasons, including:

**The statute of limitations has expired.**  Plaintiff initiated this action after the four year statute of limitations applicable to civil RICO and Chapter 93A claims expired.  *See* Wynn Motion, 7-9; FBT Motion, 20-22.

**Plaintiff does not allege "racketeering activity."**  None of the alleged conduct in the Amended Complaint qualifies as "racketeering activity" under the RICO statute.  *See* FBT Motion, 5-16; SW Motion, 1-7.  First, violation of the Massachusetts Gaming Act and Nevada gaming suitability statue are not RICO predicate acts, as they do not meet the definition of an offense "involving . . . gambling" under 18 U.S.C. § 1961(1) or an "unlawful activity" under the Travel Act.  *See* FBT Motion, 6-9, 15-16; SW Motion, 4-6.  Second, deceiving a state agency in connection with a competitive bidding process for a commercial license does not implicate the federal wire fraud and mail fraud statutes.  *See* FBT Motion, 9-12; SW Motion, 2-4.  Third, the alleged gratuity to the Everett mayor does not state an honest services fraud.  *See* FBT Motion, 12-15; SW Motion, 6-7.

**Plaintiff does not allege a "pattern" of racketeering activity.**  Even if the Amended Complaint did allege a racketeering activity (which it does not), it fails to allege the continuity and multiplicity of acts necessary to establish a "pattern" of racketeering activity.  *See* Wynn Motion, 9-14; FBT Motion, 16-17.

**Plaintiff does not plead that Defendants' alleged racketeering activity caused it injury.**  The Amended Complaint does not allege any injury caused by a RICO violation.  First, the Amended Complaint does not plausibly allege that purported misstatements or omissions in Defendants' submissions to the MGC were the proximate cause of its ostensible injury as a

would-be landlord to a competing applicant.  *See* Wynn Motion, 18-23; SW Motion, 7-8.

Second, the Amended Complaint does not allege but-for causation, as it asserts that the

ownership of FBT was generally known in the community and known by the MGC prior to it

voting to award the license to Wynn MA.  *See* SW Motion, 8-11.

> **Plaintiff does not allege any actionable conspiracy to commit a RICO violation.**

Plaintiff's boilerplate RICO conspiracy claim does not allege specific facts that establish the

Defendants agreed "to commit at least two predicate acts" in violation of RICO.  *See* Wynn

Motion, 23-24.

> **The *Noerr-Pennington* doctrine requires dismissal of the RICO claims.**  The allegedly

fraudulent submissions upon which Plaintiff's RICO claims are premised are protected

petitioning activity of the government for redress under the First Amendment.  *See id.*, 24-25.

> **Plaintiff's state law claims should be dismissed.**  Because Plaintiff's federal claims are

not viable, the Court should refrain from exercising supplemental jurisdiction over the remaining

state law claims.  *See* FBT Motion, 18.  Further, the Massachusetts anti-SLAPP statute bars

Plaintiff's state law claims because they arise out of the Wynn Entities' protected petitioning

activity.  *See* Wynn Special Motion, 2-3.

## III.   ARGUMENT

Rather than retread arguments that have been adeptly made by the other Defendants, the

remainder of this memorandum will address deficiencies in the Amended Complaint that have

not yet been briefed.  First, Sterling's RICO claims must be dismissed as a matter of law because

it fails to plead the existence of a RICO enterprise under Section 1962(c).  Second, the claims

against Ms. Sinatra must be dismissed under Rule 9(b) of the Federal Rules of Civil Procedure

because the Amended Complaint does not plead particularized facts establishing the claims

against her.

A.    **Plaintiff Fails to Allege the Existence of a Section 1962(c) RICO Enterprise**

1.    **Plaintiff Fails to Allege that the Wynn Defendants Formed an Association-in-Fact Enterprise with FBT**

Sterling argues that the Defendants formed an association-in-fact enterprise aimed at constructing and operating a casino on the Everett Site.  *See* Am. Compl.  ¶ 154.  However, Sterling does not state particularized facts supporting this conclusory assertion, and neither establishes that the Wynn Entities and FBT associated together or coordinated their efforts in support of a common goal. Therefore, the First Claim for Relief for violation of Section 1962(c) must be dismissed because Sterling fails to properly plead an association-in-fact enterprise.

To plead the existence of an association-in-fact enterprise, a plaintiff must allege facts that establish that the alleged enterprise constitutes an ongoing, "larger unit, over and above [the] separate structures and operations" of each member, and the members engage in "coordinated activity in pursuit of a common objective."  *Libertad v. Welch*, 53 F.3d 428, 442 (1st Cir. 1995); *In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 173 (D. Mass. 2003) (holding "the association must 'function as a continuing unit,' as RICO is concerned with repetitive, and not episodic conduct") (citation omitted).  These elements distinguish RICO enterprises from conspiracies and "ad hoc criminal confederation[s]," neither of which fall within the purview of the RICO statute.  *United States v. Cianci*, 378 F.3d 71, 84 (1st Cir. 2004); *see also Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 228 (7th Cir. 1997) (Posner, J.) ("RICO, however, is not a conspiracy statute . . . . 'Enterprise' connotes more").  Association-in-fact enterprises are not defined by a mere "similarity of goals and methods" among their members, *Libertad*, 53 F.3d at 443, but must also contain "elements of organization and control," *In re Lupron Mktg.*, 295 F. Supp. 2d at 174, and "systemic linkage, such as overlapping leadership, structural or financial ties, or continuing coordination."  *Libertad*, 53 F.3d at 443.

The Amended Complaint does not address the fundamental failure of the original complaint to plead the existence of an ongoing, "larger unit" or "systematic linkage" between Wynn Resorts, Limited (or its executives) and its subsidiary Wynn MA with FBT.  As in the original complaint, the Amended Complaint does not allege that the Wynn Entities and FBT had any overlapping leadership or structural ties to each other or that they participated in any common decision-making processes.  *See In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 184 (D. Mass. 2003) (dismissing RICO claim where complaint failed to allege any "common communication network, decision-making process, or organizational structure").  Nor does Sterling allege that the Wynn Entities or FBT exercised any control over the other or that either was subject, to any degree, to the control of an overarching association-in-fact enterprise.  *See In re Lupron Mktg.*, 295 F. Supp. 2d at 174.

The Amended Complaint also fails to plead specific facts showing any coordinated effort among the Wynn Entities and FBT toward a common objective.  As the Wynn Parties previously explained, Plaintiff's original complaint failed to allege a "pattern of racketeering activity" because the alleged scheme was completed upon the achievement of a single, narrow goal: "deceiving the non-defendant members of the Gaming Commission into granting the Wynn/Lohnes group's license application."  Wynn Resorts Ltd., Wynn MA, LLC, and Matthew Maddox's Motion to Dismiss the Complaint, 7-9.  Seeking to plead around this fatal defect, Sterling now claims that the enterprise's goal extended "beyond obtaining the Gaming License to the construction and operation of a casino on the Everett Site without that venture being endangered by exposure of their prior misconduct."  Am. Compl. ¶ 154.

However, Sterling fails to plead particularized facts showing that FBT played any role in the Everett Site after the Region A License was granted.  Even assuming Sterling's conclusory

assertion that FBT "was to be . . . a conduit for money between the Wynn Defendants and . . . Mayor DeMaria" pertained to conduct after November 2014, *see id.* ¶ 80, Sterling provides no supporting facts for this claim, including whether FBT actually delivered any money to Mayor DeMaria. Moreover, Sterling points to nothing else that would establish any scheme after the License was granted, and alleges no other ongoing financial relationship between FBT and the Wynn Entities. Indeed, Sterling admits that after Wynn MA acquired the License, the "next phase" of the alleged scheme did not involve FBT at all, but only involved "the Wynn Defendants," who "construct[ed] their casino on the Everett Site." *Id.* ¶ 150 (emphasis added).

At most, Sterling alleges that FBT and the Wynn Entities had independent interests in the Wynn Entities acquiring the Region A License. But merely having a common interest is insufficient to form an enterprise, *Libertad*, 53 F.3d at 443, and Sterling fails to show any coordinated action to conceal information from the MGC. As discussed below (*see* p. 12), the Amended Complaint does not allege that Ms. Sinatra (or anyone else at Wynn) was told that a "convicted criminal" had an ownership stake in the Everett Site.[2] Likewise, the Amended Complaint does not allege that FBT was aware of Mr. Wynn's alleged pattern of sexual abuse or the Wynn Entities' activities in Macau, much less that it took any action to keep that information hidden from the MGC. *See id.*, ¶¶ 52, 117, 122. Because the Amended Complaint fails to plead facts showing that the Wynn Entities and FBT associated together as a RICO enterprise either before or after the License was granted, this claim must be dismissed.

---

[2] In any event, Sterling admits that "[t]he ownership interest and involvement of . . . convicted felons was open and notorious in the community as well as readily ascertainable from public records." Am. Compl. ¶ 58; *see also* Am. Compl. ¶¶ 57, 82, 86. Sterling never explains how the Wynn Entities and their executive officers could have possibly concealed information from the MGC that was apparently well-known and publicly available.

### 2. Plaintiff Fails to Allege that Wynn MA is an Enterprise Distinct from its Corporate Parent, Wynn Resorts, Limited

In its second claim for relief, Sterling alleges that Wynn Resorts, Limited and its executives were RICO "persons" who "conducted and participated in the conduct of Wynn MA's affairs through a pattern of racketeering activity." Am. Compl. ¶¶ 159, 161. Under Section 1962(c), the RICO "enterprise" – here, Wynn MA – must be a distinct entity from the defendant "persons." *See, e.g*, *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991) ("the same entity cannot do double duty as both the RICO defendant and the RICO enterprise"); *Gen. Elec. Co. v. Lyon*, 894 F. Supp. 544, 553 (D. Mass. 1995) ("The unlawful enterprise itself cannot also be the person the plaintiff charges with conducting it.") (citation omitted). The second claim for relief fails as a matter of law because Sterling pleads facts establishing that Wynn Resorts, Limited is not distinct from Wynn MA. Further, Sterling may not allege that Wynn Resorts, Limited violated RICO merely by associating with its agents.

To determine whether a corporate parent and its subsidiary are distinct, "[r]ather than looking at a corporation's structure, the First Circuit requires judges to examine a complaint and determine whether the parent and its subsidiary's activities were distinct when the RICO violations allegedly occurred." *Deane v. Weyerhaeuser Mortg. Co.*, 967 F. Supp. 30, 34 (D. Mass. 1997). Alleging that a corporation and its subsidiary are "distinct corporate entities, with separate legal identities . . . . is not decisive for Section 1962(c) purposes," as the focus is on the entities' activities toward one another. *Compagnie De Reassurance D'Ile de France v. New England Reinsurance Corp.*, 57 F.3d 56, 92 (1st Cir. 1995) (affirming dismissal of RICO claim where enterprise, a wholly-owned subsidiary, had no unique employees and took no action independent of defendant, its corporate parent). Consequently, failure to plead the subsidiary

took actions distinct from its parent is fatal to a RICO claim.  *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 449 (1st Cir. 2000).

Here, Sterling's allegations about Wynn MA conclusively establish that its activities were not distinct from Wynn Resorts, Limited at the time of the alleged RICO violations.  Sterling alleges that Wynn MA "had no autonomous management team," and "all significant decisions of Wynn MA, including without limitation its decisions to engage in the criminal and/or tortious acts [alleged in the Amended Complaint] were made for it by Wynn Resorts . . . . Accordingly, all acts and omissions of Wynn MA . . . were acts and omissions of Wynn Resorts for which Wynn Resorts is fully accountable."  Am. Compl. ¶ 18.  In *Deane v. Weyerhaeuser*, the court dismissed plaintiff's RICO claim with prejudice where the pleaded facts demonstrated an "integrated operational relationship" between corporate parents and a wholly owned subsidiary that precluded a finding of distinctiveness.  967 F. Supp. at 34.  As in *Deane*, Sterling's Second Claim for Relief should be dismissed with prejudice because its allegations about Wynn MA's dependence on Wynn Resorts, Limited for its leadership and actions precludes a finding that it is distinct from its corporate parent. [3]

### 3.   The Third Claim for Relief Must be Dismissed because Plaintiff Fails to Plead a Viable Enterprise

In its third claim for relief, Sterling alleges:  (1) Defendants conspired to violate RICO by conducting and participating in the affairs of an association-in-fact enterprise comprised of all of

---

[3] Even if Sterling solved one problem by further amending its Complaint to remove Wynn MA as the RICO enterprise, this "solution" would create another insurmountable problem.  Because a corporation "acts through its employees, subsidiaries, and agents," a plaintiff cannot circumvent the distinctiveness requirement by claiming an association-in-fact enterprise consists of a defendant corporation and the parties through which it acts.  *E.g.*, *Rhodes v. Consumers' Buyline, Inc.*, 868 F. Supp. 368, 376 (D. Mass. 1993); *see also U1it4less, Inc. v. Fedex Corp.*, 871 F.3d 199, 206 (2d Cir. 2017), cert. denied, 138 S. Ct. 1559, 200 L. Ed. 2d 743 (2018) (holding that a corporate RICO defendant cannot be accused of "corrupting itself" by merely associating with its own employees).  For this reason, Sterling cannot state a viable RICO claim against Wynn Resorts, Limited and its current and former officers and directors.

the Defendants through a pattern of racketeering, and (2) Wynn Resorts, Limited's current and former officers and directors conspired to violate RICO by conducting and participating in the affairs of Wynn, MA through a pattern of racketeering.  Am. Compl. ¶¶ 164, 167.

Sterling's "enterprise" allegations fair no better in its conspiracy claim than they do in its substantive claims for relief under Section 1962(c).  For the reasons discussed above, this claim must be dismissed because Sterling has not alleged a viable RICO enterprise.  Sterling's conspiracy claim must additionally be dismissed to the extent it attempts to allege a conspiracy internal to Wynn Resorts, Limited, as "a corporate entity is incapable of 'conspiring' with its own officers and employees." *Rhodes*, 868 F. Supp. at 377.

### B.  The Claims Against Ms. Sinatra Must Also Be Dismissed Under Rule 9(b)

Even ignoring the host of fatal defects identified above and by the arguments adopted and incorporated herein, the claims against Ms. Sinatra must also be dismissed because they do not "specify the who, what, where, and when" of her alleged wrongdoing, as required by Rule 9(b). *See, e.g.*, *Metro. Prop. & Cas. Ins. Co. v. Savin Hill Family Chiropractic, Inc.*, C.A. No. 15-12939-LTS, 2016 WL 11004383, at *3 (D. Mass. June 15, 2016) (citation omitted).

As before, the Amended Complaint seeks to premise Ms. Sinatra's liability on the unsupported accusation that she must have known "at least one individual with a criminal history was a partial owner of FBT" (Am. Compl. ¶ 81), and intentionally misrepresented that fact on Wynn MA's MGC application.  As before, however, the Amended Complaint's conclusory assertions of Ms. Sinatra's purported wrongdoing are not grounded in facts, let alone the specific facts required by Rule 9(b), and thus cannot be used to state a claim against her.

1.     **The Amended Complaint's RICO Claims Against Ms. Sinatra Are
Legally Deficient Under Rule 9(b)**

Rule 9(b) of the Federal Rules of Civil Procedure applies to civil RICO claims, including

those based on mail and wire fraud.  *See, e.g.*, *New England Data Servs., Inc. v. Becher*, 829

F.2d 286, 289 (1st Cir. 1987).  Where the complaint "involves multiple defendants," Rule 9(b)

requires that the allegations regarding "each defendant's role must be particularized with respect

to their alleged involvement in the fraud." *Rhone v. Energy N., Inc.*, 790 F. Supp. 353, 361 (D.

Mass. 1991) (quoting *Kuney Int'l S.A. v. DiIanni*, 746 F. Supp. 234, 237 (D. Mass. 1990)). *See

also Sebago, Inc. v. Beazer E., Inc.*, 18 F. Supp. 2d 70, 79 (D. Mass. 1998) ("When multiple

defendants are involved in cases arising in this circuit, Rule 9(b) requires that fraud be alleged

particularly as to each defendant") (citation omitted).

It is not enough, as Sterling attempts here (*see* Am. Compl. ¶ 21), to allege that Ms.

Sinatra is liable by nature of her role as Wynn Resorts, Limited's former General Counsel.  *See,

e.g.*, *Nat'l Grp. for Commc'ns & Computers, Ltd. v. Lucent Techs. Inc.*, No. 03 Civ. 6001 (NRB),

2004 WL 2903745, at *3 (S.D.NY. Dec. 15, 2004) ("An officer or director is not liable merely

because of her office") (citation omitted).  To state a claim and survive this Motion, the

Complaint must specifically allege that Ms. Sinatra had "direct personal involvement" in "some

decision or action which is causally related to plaintiff's injury."  *Escude Cruz v. Ortho Pharm.,

Corp.*, 619 F.2d 902, 907 (1st Cir. 1980).  For that reason, the Amended Complaint's generalized

allegations regarding "Defendants" or the "Wynn Defendants" should be disregarded for purpose

of this Motion.  *See, e.g.*, *TLH Int'l v. Au Bon Pain Franchising Corp.*, Civ. A. No. 86-2061-

MA, 1986 WL 13405, at *7 (D. Mass. Nov. 13, 1986) (dismissing complaint where there were

"no allegations or descriptions of actions and statements attributable to each of the defendants").

The question, then, is whether the Amended Complaint's allegations addressing Ms. Sinatra's purported actions (*see* Am. Compl. ¶¶81, 87-88, 91, 93, 100, 102, 111, 116, 130) satisfy the heightened requirements of Rule 9(b) and state a claim for a RICO violation. As before, the answer is no.

For an individual defendant to be liable for a RICO violation under Section 1962(c), the plaintiff must show that the defendant participated in the enterprise's affairs "through a pattern of racketeering activity." *See Liberty Mut. Ins. Co. v. Diamante*, 138 F. Supp. 2d 47, 55 (D. Mass. 2001) (quoting *Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1558 (1 Cir. 1994)). But the only action ascribed to Ms. Sinatra is her "preparation and submission of [the] fraudulent applications" to the MGC. Compl. ¶ 91. As noted above, that single act cannot form the predicate for RICO liability. *See, e.g.*, *Home Orthopedics Corp. v. Rodriguez*, 781 F.3d 521, 530 (1st Cir. 2015) (affirming dismissal where the alleged "unlawful acts ha[d] their origin in a single event or single transaction") (citations and quotation marks omitted). And as Mr. Wynn's Motion to Dismiss aptly demonstrates, even if Wynn MA's application to the MGC had violated the Gaming Act by "willfully" misrepresenting the facts—and there are no allegations to suggest that it did—a violation of the Gaming Act cannot form the predicate for RICO liability. *See* SW Motion, 7-9.

In any event, the Amended Complaint asserts that Ms. Sinatra violated RICO because Wynn MA's application to the MGC failed to disclose the involvement of convicted criminals in the ownership of the Everett Site. Am. Compl. ¶ 87. The Amended Complaint repeatedly admits that FBT lied to Ms. Sinatra in that regard (*id.* ¶¶ 89, 92-94, 97, 114), but argues Ms. Sinatra "could not have been fooled" by those lies (*id.* ¶ 87) because, in November of 2012, Ms. Sinatra was purportedly told "a convicted criminal" had an ownership stake in the Everett Site

(*id.* ¶ 81).  In fact, the Amended Complaint alleges she was told that "an individual with a checkered past" was an owner (*id.*), but that colloquial statement does not identify the individual (Sterling guesses it "apparently" referred to Lightbody (*id.*)), and it says nothing at all about his or her criminality.  Nor can the statement be used to show Ms. Sinatra should have questioned whether DeNunzio, Lohnes and Gattineri were "the only equity holders of FBT" (*id.* ¶ 93), because the non-specific statement could have easily been referring to one of those three people.

Similarly, the Amended Complaint alleges that "all Defendants" knew that Jamie Russo, who FBT disclosed as a partial owner of the Everett Site, also "had a criminal record" and intentionally concealed that fact on the MGC application, as well.  Am. Compl. ¶¶ 114-115; *see also id.* at ¶ 61 (alleging that "in the early 1990['s]" Russo was convicted of a misdemeanor).  But the Amended Complaint does not allege that Ms. Sinatra knew that alleged fact, when she learned it, or how she learned it.  As such, that conclusory accusation should be disregarded for purposes of this Motion, as well.

The Amended Complaint further asserts that Ms. Sinatra violated RICO because Wynn MA's application failed to disclose Mr. Wynn's "pattern of abusive sexual misconduct" (Am. Compl. ¶ 36), as required by the Gaming Statute (*id.* at ¶ 28 (applicants rejected where their prior acts "form a pattern of misconduct")).  But the Amended Complaint does not allege that Ms. Sinatra was aware of some "pattern" of sexual abuse—it alleges that "no later than January 2012," Ms. Sinatra was told that Mr. Wynn had paid a settlement to one accuser years earlier (and before Ms. Sinatra was General Counsel).  *Id.* ¶ 36.  That's it; one accuser – there are no allegations of repeated settlements or allegations of misconduct.  Plainly, one alleged incident

cannot form a "pattern," and its non-disclosure would not violate the Gaming Statute, and thus, on that basis alone, it cannot form the basis for a RICO claim.[4]

### 2.    The Amended Complaint's State Law Claims Against Ms. Sinatra Are Not Specifically Pled

The Amended Complaint's state law claims against Ms. Sinatra must also be dismissed under Rule 9(b). First, the claim under Chapter 93A § 11 must be dismissed because the Amended Complaint does not allege—specifically or otherwise—a "commercial transaction" between Ms. Sinatra and Plaintiff. *See, e.g.*, *Szalla v. Locke*, 421 Mass. 448, 451 (1995). It does not allege that Ms. Sinatra had a "contractual or business relationship" with Plaintiff, and therefore the claim must be dismissed. *See, e.g.*, *Mastoran Rests., Inc. v. Commonwealth Div. of Capital Asset Mgmt.*, No. 001998BLS, 2001 WL 1811963, at *5 (Mass. Super. Ct. Dec. 31, 2001).

The same is true for the Amended Complaint's claim of tortious interference, which is founded on Ms. Sinatra's purported interference in Plaintiff's relationship "with a third party, MSM." Am. Compl. ¶ 177. For a tortious inference claim to lie, Plaintiff must specifically allege, in pertinent part, "the defendant['s] knowledge of the contract or business relationship" and "the defendant['s] intentional interference with the contract or business relationship for an improper purpose." *Sherman v. Clear Channel Outdoor, Inc.*, 889 F. Supp. 2d 168, 176 (D. Mass. 2012) (citation omitted). Here, the Amended Complaint does not allege, specifically or otherwise, that Ms. Sinatra had any knowledge of Plaintiff's relationship with MSM, let alone that she had some "improper motives" to intentionally interfere with it. *See, e.g.*, *Hunneman*

---

[4] The Amended Complaint also alleges that Ms. Sinatra made a number of "knowingly false statements to the [MGC]" (Am. Compl. ¶ 129), but in every case, the statements are allegedly false because they omitted to disclose the information discussed above (*id.* at ¶ 130). Because the Amended Complaint fails to specifically allege Ms. Sinatra was aware of the allegedly omitted information, Plaintiff's allegation of "knowing" falsehoods should be disregarded.

*Real Estate Corp. v. Norwood Realty, Inc.*, 54 Mass. App. Ct. 416, 428–29 (2002) (actions taken in order to further a party's competitive interest do not constitute improper purpose); *Am. Private Line Servs., Inc. v. E. Microwave, Inc.*, 980 F.2d 33, 37 (1st Cir. 1992) (where party's motivation was its own financial benefit, it was not acting with an improper purpose).

## IV.   <u>CONCLUSION</u>

For the aforementioned reasons, and the reasons set forth in the other Defendants' memoranda of law in support of their respective motions to dismiss, Ms. Sinatra respectfully asks the Court to dismiss the Amended Complaint.

Dated: March 8, 2019

Respectfully submitted,

**KIMMARIE SINATRA**

By her counsel,


/s/ *Douglas H. Meal*
Douglas H. Meal, Bar No. 340971
dmeal@orrick.com

ORRICK, HERRINGTON & SUTCLIFFE LLP
500 Boylston Street, Suite 1850
Boston, MA 02116
Telephone:   +1 617 880 1800
Facsimile:    +1 617 880 1801

James N. Kramer (*pro hac vice*)
jkramer@orrick.com
M. Todd Scott (*pro hac vice*)
tscott@orrick.com

The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:   +1 415 773 5700
Facsimile:    +1 415 773 5759

**CERTIFICATE OF SERVICE**

I, Douglas H. Meal, hereby certify that, on March 8, 2019, true and accurate copies of the foregoing were served on counsel for all parties through ECF.

*/s/ Douglas H. Meal*
Douglas H. Meal