# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

STERLING SUFFOLK RACECOURSE, LLC,

        Plaintiff,

v.

WYNN RESORTS, LTD; WYNN MA, LLC; STEPHEN
WYNN; KIMMARIE SINATRA; MATTHEW
MADDOX; and FBT EVERETT REALTY, LLC,

        Defendants.

No. 1:18-cv-11963 PBS

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT STEPHEN WYNN'S
# MOTION TO DISMISS THE AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................1

I.      The RICO Claims Should Be Dismissed Pursuant To Rule 12(B)(6) ....................1

    A.      The Amended Complaint Fails To Properly Plead Any RICO
Predicate Acts ...........................................................................................1

       i.      Mail and Wire Fraud ......................................................................2

       ii.     "Gambling" ....................................................................................4

       iii.    Travel Act ......................................................................................5

       iv.     Honest Services Fraud ...................................................................6

    B.      Plaintiff Fails To Plead A "Pattern" Of Racketeering Activity ..................7

    C.      Plaintiff Fails To Plead Proximate Causation .............................................7

    D.      Count I Should Be Dismissed Because It Fails To Establish
But-For Causation .......................................................................................8

    E.      Count II Should Be Dismissed Because The RICO "Person"
And RICO "Enterprise" Are One And The Same ......................................11

    F.      Plaintiff's RICO Conspiracy Claim Fails .................................................12

II.     Regardless Of Whether Plaintiff States A Claim Against Other
Defendants, The RICO Claims Against Mr. Wynn Fail Because
Plaintiff Has Not Alleged Two Racketeering Acts By Mr. Wynn ......................13

    A.      Under Rule 9(b), The Court Should Disregard All Allegations
Against Wynn Resorts, Wynn MA, and "All Defendants" In
Assessing Mr. Wynn's Liability ...............................................................13

    B.      The Macau Allegations Are Not Racketeering Acts..................................15

    C.      The Remaining Allegations Do Not Specify Racketeering
Activity By Mr. Wynn ..............................................................................16

III.    The State Law Claims Should Be Dismissed .......................................................18

    A.      Plaintiff Fails To State A Chapter 93A Claim ..........................................18

    B.      Plaintiff Fails To Plead Its Tortious Interference Claims ..........................19

    C.      The Fraud Underlying The State Law Claims Is Not Pled
With Particularity......................................................................................20

CONCLUSION.....................................................................................................................20

# TABLE OF AUTHORITIES

**Federal Cases**

*Aetna Cas. Sur. Co. v. P & B Autobody*,
    43 F.3d 1546 (1st Cir. 1994) ................................................................13

*Bessette v. Avco Fin. Servs., Inc.*,
    230 F.3d 439 (1st Cir. 2000) .........................................................11, 12

*Boston Cab Dispatch, Inc. v. Uber Tech., Inc.*,
    No. 13-cv-10769, 2015 WL 314131 (D. Mass. Jan. 26, 2015) .................8

*Brill v. United States*,
    No.10-05104, 2011 WL 249740 (N.D. Cal. Jan. 26, 2011) ....................16

*Caesars Mass. Mgmt. Co., LLC v. Crosby*,
    778 F.3d 327 (1st Cir. 2015) ................................................................8

*Cleveland v. United States*,
    531 U.S. 12 (2000) ...................................................................2, 3, 4

*Doyle v. Hasbro, Inc.*,
    103 F.3d 186 (1st Cir. 1996) ..............................................................11

*Efron v. Embassy Suites (P.R.), Inc.*,
    223 F.3d 12 (1st Cir. 2000) ..........................................................7, 12

*Escude Cruz v. Ortho Pharm. Corp.*,
    619 F.2d 902 (1st Cir. 1980) ..............................................................14

*Feinstein v. Resolution Trust Corp.*,
    942 F.2d 34 (1st Cir. 1991) ..................................................................6

*George v. Nat'l Water Main Cleaning Co.*,
    286 F.R.D. 168 (D. Mass. 2012) ..........................................................8

*Home Orthopedics Corp. v. Rodriguez*,
    781 F.3d 521 (1st Cir. 2015) ................................................................7

*Jones v. Experian Info. Sols., Inc.*,
    141 F. Supp. 3d 159 (D. Mass. 2015) ..................................................14

*Kuney Int'l, S.A. v. Dilanni*,
    746 F. Supp. 234 (D. Mass. 1990) ......................................................13

*Langan v. Smith*,
    312 F. Supp. 3d 201 (D. Mass. 2018) ..................................................13

*Loan v. Fed. Deposit Ins. Corp.*,
  717 F. Supp. 964 (D. Mass. 1989) ...................................................................14

*Mear v. Sun Life Assur. Co. of Canada (U.S.)/Keyport Life Ins. Co.*,
  No. 06-cv-12143, 2008 WL 245217 (D. Mass. Jan. 24, 2008)................................12

*Mendez Internet Mgmt. Servs., Inc. v. Banco Santander de P.R.*,
  621 F.3d 10 (1st Cir. 2010).............................................................................1

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*,
  No. 91-cv-2923, 1994 WL 88129 (S.D.N.Y. Mar. 15, 1994)...................................6

*Metro. Prop. & Cas. Ins. Co. v. Savin Hill Family Chiropractic, Inc.*,
  No. 15-cv-12939, 2016 WL 11004383 (D. Mass. June 15, 2016).........................15

*N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*,
  567 F.3d 8 (1st Cir. 2009).......................................................................17, 20

*Nat'l Grp. for Commc'ns & Computers, Ltd. v. Lucent Techs. Inc.*,
  No. 03-cv-6001, 2004 WL 2903745 (S.D.N.Y. Dec. 15, 2004)..............................14

*New England Data Servs., Inc. v. Becher*,
  829 F.2d 286 (1st Cir. 1987).........................................................................13

*Reich v. Lopez*,
  858 F.3d 55 (2d Cir. 2017)..............................................................................6

*Rick v. Profit Mgmt. Assocs., Inc.*,
  241 F. Supp. 3d 215 (D. Mass. 2017) ..............................................................14

*The Roxbury/S. End Tenants' Council, Inc. v. Cornerstone Corp.*,
  573 F. Supp. 2d 359 (D. Mass. 2008) ..............................................................13

*TLH Int'l v. Au Bon Pain Franchising Corp.*,
  No. 86-cv-2061, 1986 WL 13405 (D. Mass. Nov. 13, 1986) ..................................14

*Toyz, Inc. v. Wireless Toyz, Inc.*,
  799 F. Supp. 2d 737 (E.D. Mich. 2011)..............................................................14

*United States v. Berroa*,
  856 F.3d 141 (1st Cir. 2017)....................................................................2, 3, 4

*United States v. Ferber*,
  966 F. Supp. 90 (D. Mass. 1997) ......................................................................5

*United States v. Genova*,
  187 F. Supp. 2d 1015 (N.D. Ill. 2002) ................................................................4

iv

*United States v. Madison*,
657 F. App'x 67 (2d Cir. 2016) .................................................................................................7

*United States v. Mark*,
460 F. App'x 103 (3d Cir. 2012) .............................................................................................4

*In re Vertex Pharms. Inc., Secs. Litig.*,
357 F. Supp. 2d 343 (D. Mass. 2005) ......................................................................................9

*Youssef v. Halcrow, Inc.*,
504 F. App'x 5 (2d Cir. 2012) ..................................................................................................9

**State Cases**

*Carvel Corp. v. Noonan*,
818 N.E.2d 1100 (N.Y. 2004)................................................................................................20

*Harrison v. NetCentric Corp.*,
433 Mass. 465 (2001) .............................................................................................................19

*Hunneman Real Estate Corp. v. Norwood Realty, Inc.*,
54 Mass. App. Ct. 416 (2002)................................................................................................20

*Mastoran Rests., Inc. v. Commonwealth Div. of Capital Asset Mgmt.*,
No. 001998-BLS, 2001 WL 1811963 (Mass. Super. Dec. 31, 2001)...............................18, 19

*Psy-Ed Corp. v. Klein*,
459 Mass. 697 (2011) .............................................................................................................19

*Szalla v. Locke*,
421 Mass. 448 (1995) .............................................................................................................18

**Statutes**

18 U.S.C. § 1952.........................................................................................................................5

18 U.S.C. § 1961.........................................................................................................................4

Mass. Gen. L. c. 93A ..........................................................................................................4, 5, 16

**Rules**

Fed. R. Civ. P. 9.............................................................................................................1, 13, 18, 20

Fed. R. Civ. P. 12......................................................................................................................1

## INTRODUCTION

Defendant Stephen A. Wynn respectfully requests that the Court dismiss the Amended Complaint with prejudice.  The Amended Complaint fails to state a claim against Mr. Wynn or any other defendant and is devoid of any allegations of legal consequence.  Rather than defend its original complaint in the face of Mr. Wynn's motion to dismiss, Plaintiff chose to re-plead with little more than innuendo.

As set forth below, there are at least four independent reasons that the Court should dismiss the RICO counts against Mr. Wynn (and, indeed, against all defendants).  The Amended Complaint should also be dismissed because it does not allege Mr. Wynn's participation in two predicate racketeering acts with the specificity required by Fed. R. Civ. P. 9(b).  For similar reasons, the ancillary state law claims should also be dismissed.

## ARGUMENT

### I.   The RICO Claims Should Be Dismissed Pursuant to Rule 12(b)(6)

The RICO claims should be dismissed because: (1) no RICO predicate acts are pled; (2) there is no "pattern" of racketeering activity; and (3) there is no proximate causation.  In addition, with respect to Count I, "but-for" causation is not pled, and with respect to Count II, the Amended Complaint does not distinguish the RICO "persons" from the RICO "enterprise." Count III (RICO conspiracy) does not survive the failure to plead any substantive RICO claims.

#### A.  The Amended Complaint Fails To Properly Plead Any RICO Predicate Acts

The RICO claims cannot survive because Plaintiff has not properly pled any RICO predicate acts.  *See, e.g.*, *Mendez Internet Mgmt. Servs., Inc. v. Banco Santander de P.R.*, 621 F.3d 10, 16 (1st Cir. 2010) ("[L]acking a proper allegation of either class of predicate acts, [Plaintiff's] RICO claim fails at the pleading stage.").  Although the Amended Complaint is

filled with extraneous information, the only predicate acts alleged are: (1) mail and wire fraud related to the application for a Massachusetts gaming license; (2) Massachusetts "gambling" crimes; (3) Travel Act violations related to both Massachusetts and Nevada "gambling" crimes; and (4) honest services fraud related to Mayor DeMaria.  *See generally* Am. Compl. ¶¶ 155, 161.

### i. Mail and Wire Fraud

The Amended Complaint fails to transform alleged misrepresentations to a state licensing authority—a garden variety state law issue—into a federal crime.  Fatal to Plaintiff's claim is that the mail and wire fraud statutes require that the object of the fraud be the "obtaining of money or property."  Here, the "money or property" the Defendants sought was a **gaming license** in the hands of the Massachusetts Gaming Commission ("MGC").  This fact is dispositive because the Supreme Court has held that, "[i]t does not suffice . . . that the object of the fraud may become property in the recipient's hands; for purposes of the mail fraud statute, the thing obtained must be property in the hands of the victim."  *Cleveland v. United States*, 531 U.S. 12, 15 (2000).  Further "**[T]he Supreme Court has broadly and unequivocally instructed that '[s]tate and municipal licenses' generally 'do not rank as 'property,'' sufficient to support a conviction under § 1341**."  *United States v. Berroa*, 856 F.3d 141, 149 (1st Cir. 2017) (emphasis added) (quoting *Cleveland*, 531 U.S. at 15).  Thus, the fact that the casino license *could have* constituted "property" in the hands of Wynn Resorts or, for that matter, Plaintiff, is not legally sufficient to state a claim.

The *Cleveland* case is strikingly similar to the one at bar.  There, the government charged the defendants with RICO violations predicated on mail fraud.  The defendants allegedly "fraudulently conceal[ed] that they were the true owners of" an entity in an application for a video poker license because they were concerned their financial problems "could have

undermined their suitability to receive" the license.  *Cleveland*, 531 U.S. at 17.  The Court

vacated the mail fraud convictions and held that the state's licensing scheme was an "exercise[ ]

of state police powers," rather than a state property interest.  *Id.* at 21.  The licenses were not

"property" in the hands of the state, in part, because:

> Equating issuance of licenses or permits with deprivation of property would subject
> to federal mail fraud prosecution a wide range of conduct traditionally regulated by
> state and local authorities . . . .  Louisiana's video poker statute typically and
> unambiguously imposes criminal penalties for making false statements on license
> applications. . . .  [U]nless Congress conveys its purpose clearly, it will not be
> deemed to have significantly changed the federal-state balance in the prosecution
> of crimes.

*Id.* at 24 (citations omitted).

The gravamen of the Amended Complaint is that the enterprise defrauded the MGC in

order to obtain a gaming license.  *See, e.g.*, Am. Compl. ¶¶ 8-9 ("Thus, in order to unlawfully

acquire the Gaming License . . . .").  Pleading around *Cleveland* by alleging that the fraud was

aimed at the proceeds of a future casino changes nothing.  The First Circuit rejected such novel

pleading in *Berroa*.  There, defendants submitted fraudulent test scores to the Puerto Rico Board

of Medical Examiners and were granted medical licenses.  Recognizing that "*Cleveland* squarely

precluded the government from seeking mail fraud convictions on the theory that the defendants

defrauded the Board out of some property interest in the medical licenses," the government

charged that the object of the fraud was to deprive "unsuspecting consumers of health care

services" of money at the time when the physicians were able to use "their fraudulently obtained

medical licenses."  *Id.* at 149.  The court found there was no proximate causation because the

fraud "cannot be said to have naturally induced healthcare consumers to part with their money

years later."[1]  *Id.* at 150. The First Circuit stated:

---

[1]     Similarly, if Plaintiff was to argue that the object of the fraud was casino customers' money, any
misrepresentations to the MGC "cannot be said to have naturally induced [casino customers] to part with their

> **[M]edical licenses, much like the gaming licenses at issue in *Cleveland*, almost invariably are sought and obtained in an effort to realize some monetary profit.**  Accordingly, under the government's theory, virtually any false statement in an application for a medical license could constitute a federal crime.  Such a broad reading of the statute would impermissibly infringe on the states' distinctively sovereign authority to impose criminal penalties for violations of licensing schemes, including making false statements in a license application. . . . [T]he phrase "by means of" serves as a textual limitation preventing such a usurpation of state criminal jurisdiction.

*Id*. (emphasis added).  Just as the First Circuit rejected the "effort to circumvent *Cleveland*" in

*Berroa*, so too should this Court reject a similar attempt by Plaintiff here.

### ii.  "Gambling"

The Amended Complaint claims that misrepresentations to the MGC violate the

Massachusetts Gaming Act, and therefore constitute "racketeering activity" for purposes of

RICO.  This is not so.  RICO defines "racketeering activity," in part, to include "any act or threat

involving . . . **gambling** . . . which is chargeable under State law and punishable by

imprisonment for more than one year."  18 U.S.C. § 1961(1).  In other words, it is Plaintiff's

position that the act of submitting an application to the MGC is an "act . . . involving . . .

gambling."  But as the Third Circuit held:

> The test for determining whether the charged acts fit into the generic category of the predicate offense is whether the indictment charges a type of activity generally known or characterized in the proscribed category.  Gambling is defined as "the act or practice of betting," or "the act of risking something on an uncertain event."

*United States v. Mark*, 460 F. App'x 103, 107 (3d Cir. 2012) (quoting WEBSTER'S THIRD NEW

INT'L DICTIONARY (1981)).  Submitting an application is not "gambling" or "betting," even if the

object of the application is to obtain a gaming license.  *Cf. United States v. Genova*, 187 F. Supp.

2d 1015, 1021 (N.D. Ill. 2002) (holding that the "filing of false statements—even if done with

---

money years later."  Notably, the alleged fraud occurred in 2013-2014.  Five years later, the casino still has not opened its doors.

the intent of concealing a bribery scheme—is not the same" as the RICO predicate offense of "bribery"). Plaintiff's attempt to shoehorn the misrepresentations into the "gambling" category simply because the statements were made to a state authority that regulates gambling stretches the definition of "gambling" far beyond the statute. This is especially so where, as here, the applicant is years away from participating in any actual "gambling" activity. Plaintiff's reading would result in all violations of the Massachusetts Gaming Act becoming RICO predicate offenses, constituting an unwarranted expansion of federal criminal law.

### iii.  Travel Act

The Travel Act prohibits travel in interstate commerce for the purpose of carrying on an "unlawful activity." 18 U.S.C. § 1952. Plaintiff here refers to the "unlawful activity" of "facilitat[ing] the promotion, management, establishment, or carrying on, of . . . any business enterprise involving gambling . . . offenses in violation of the laws of the State in which they are committed." 18 U.S.C. §§ 1952(a)(3), (b). For the same reason that violations of the Massachusetts Gaming Act fail as RICO predicates, the Travel Act allegations that hinge on Massachusetts Gaming Act violations also fail. Quite simply, there is no "gambling" activity alleged in the Amended Complaint. As with its reading of the word "gambling" in the RICO statute, Plaintiff's expansive definition of "gambling" in the Travel Act would turn every violation of the Massachusetts Gaming Act into a federal crime. *See United States v. Ferber*, 966 F. Supp. 90, 102-03 (D. Mass. 1997) ("[T]he Travel Act must not be read so expansively as to upset the delicate balance between the powers of the federal and state sovereigns.").

Plaintiff also alleges that Wynn Resorts' violations of the **Nevada** gaming suitability statute violates the Travel Act. While there were gaming operations in Nevada when the alleged conduct took place, Plaintiff has not shown any connection to interstate commerce. Plaintiff has

only alleged that "**at least some** of these violations involved interstate travel or the use of the

mail or other facilities in interstate commerce." Am. Compl. ¶ 38 (emphasis added). Plaintiff

fails to state: (1) *which* "violations" involved interstate commerce; (2) *facts* showing *how* such

"violations" involved interstate commerce; or (3) *which* defendants used interstate facilities. In

short, "[t]he Complaint sets forth no facts showing that any facilities in interstate commerce were

used in connection with this unlawful act." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v.

Young*, No. 91-cv-2923, 1994 WL 88129, at *14 (S.D.N.Y. Mar. 15, 1994).

Further, the Nevada allegations are not "horizontally related" to the other alleged

predicate acts. *See Reich v. Lopez*, 858 F.3d 55, 61–62 (2d Cir. 2017). The Nevada allegations

relate to personal misconduct dating back to 2005 which purportedly violated the Nevada

gaming statutes, while all of the other predicate acts relate to Wynn Resorts' attempt in the 2013-

2014 timeframe to procure a Massachusetts gaming license. These allegations are not "related"

for purposes of forming a RICO pattern. *See Feinstein v. Resolution Trust Corp*., 942 F.2d 34,

44-47 (1st Cir. 1991) (predicate acts involving two transactions separated by two years not

related, despite involving some common participants and similar purposes of transactions).

### iv.  Honest Services Fraud

In a last-ditch effort to preserve its claims, Plaintiff alleges honest services fraud based on

the defendants "causing Mayor DeMaria to abuse the powers of his public office." Am. Compl.

¶ 155(c). But the only **facts** alleged to support this legal conclusion are that: (1) Mayor DeMaria

received a share of Mr. Russo's 3% fee; (2) in 2016 Mr. Wynn spoke with Mayor DeMaria about

real estate Wynn Resorts desired; and (3) in 2016 the business located on the property received a

"notice of violations" from the Everett Building Department, which was "under the sway of

Mayor DeMaria." *Id.* at ¶¶ 60, 108, 109. Plaintiff does not allege that the "notice of violations"

was illegitimate, that it was issued *because of* any promised payment from the Wynn Defendants, or that the Wynn Defendants offered anything to Mayor DeMaria *in exchange for* any favors. *See United States v. Madison*, 657 F. App'x 67, 69 (2d Cir. 2016) ("Honest services fraud requires a quid pro quo . . . ."). Aside from the conclusory allegation that "[t]he Wynn Defendants either knew, or were willfully blind to, the actual role and purpose of Russo," Am. Compl. ¶ 115, Plaintiff does not even allege that Mr. Wynn **actually knew** that Mr. Russo was "funneling" money to Mayor DeMaria.[2]

### B. Plaintiff Fails To Plead A "Pattern" Of Racketeering Activity

Under the most generous reading, the "scheme" alleged here lasted twenty months, from December 2012 until September 2014, when the MGC voted to grant the license to Wynn Resorts. *See* Am. Compl. ¶¶ 88, 139. **More critical than its finite duration, the so-called "scheme" had one alleged goal—to fraudulently obtain a single Massachusetts gaming license.** *See id.* at ¶ 8 (describing RICO scheme "to unlawfully acquire the Gaming License . . . .").[3] This type of "single purpose" transaction does not constitute a RICO "pattern." *See Home Orthopedics Corp. v. Rodriguez*, 781 F.3d 521, 530 (1st Cir. 2015) (affirming dismissal where defendants "engaged in unlawful conduct for the purpose of accomplishing a singular, narrow goal"); *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 17-21 (1st Cir. 2000).

### C. Plaintiff Fails To Plead Proximate Causation

Mr. Wynn's alleged conduct did not proximately cause any injury to the Plaintiff. Plaintiff alleges that the misrepresentations were made to the MGC, not to Plaintiff. The MGC

---

[2]   There are also relatedness and causation issues with using the honest services fraud as a predicate act. If the fraud had any purpose, it was to remove a business from land in **2016.** This is completely unrelated to the alleged scheme to fraudulently procure a Massachusetts Gaming License, which was granted in **2014.**

[3]   With respect to Count I, Plaintiff's attempt to extend the "pattern" by arguing that "the enterprise's primary purpose . . . extended beyond obtaining the Gaming License," Am. Compl. ¶ 154, suffers from the fatal flaw that Plaintiff has not alleged any ongoing interest once the Everett land was sold to Wynn Resorts.

in turn made an independent decision based on a variety of factors to award the license to Wynn

MA.  *Cf. Caesars Mass. Mgmt. Co., LLC v. Crosby*, 778 F.3d 327, 334 (1st Cir. 2015)

("[E]xpectation of value on the part of any applicant appears untenable . . . under the terms of the

licensing statute itself, which invests the Commission with an apparently unlimited scope for

discretionary judgment . . . .").  Plaintiff's injury is that it lost a potential tenant, Mohegan Sun

Massachusetts ("Mohegan"), because Wynn MA was awarded the license instead of Mohegan.

This indirect causal chain is insufficient to state a claim for relief under RICO.  *See Boston Cab*

*Dispatch, Inc. v. Uber Tech., Inc.*, No. 13-cv-10769, 2015 WL 314131, at *7-8 (D. Mass. Jan.

26, 2015) (dismissing claims where causation chain was "too attenuated to satisfy proximate

cause"); *George v. Nat'l Water Main Cleaning Co.*, 286 F.R.D. 168, 185-86 (D. Mass. 2012).

D.   **Count I Should Be Dismissed Because It Fails To Establish But-For Causation**

With respect to Count I—that the Defendants failed to disclose the interests of Messrs.

Lightbody, DeCicco, and Russo in FBT Everett Realty, LLC ("FBT")—the alleged "causation"

is contradicted by the Amended Complaint itself.  Plaintiff alleges that in December 2012, the

*Boston Business Journal* disclosed the ownership interests of "convicted felon Gary DeCicco."

Am. Compl. ¶ 86.  By that time, "[t]he ownership interest and involvement of these convicted

felons [DeCicco and Lightbody] was open and notorious in the community as well as readily

ascertainable from public records."  *Id*. at ¶¶ 58, 80.  And the interest of Mr. Russo was disclosed

to the MGC, at the latest, in December 2013.  *Id.* at ¶ 114.  By all accounts, "**in July 2013, the**

**Wynn Defendants were known to the Gaming Commission to have associated with known**

**felons and to have failed to disclose those affiliations**."  *Id.* at ¶ 110.  **Nonetheless, over a**

**year later, on September 16, 2014, the MGC voted to award the license to Wynn MA**.  *Id.* at

¶ 139.  The Defendants' actions could not have possibly *caused* Plaintiff's injury because the

MGC learned of the undisclosed ownership interests and chose to grant Wynn MA the license

anyway.  *See Youssef v. Halcrow, Inc.*, 504 F. App'x 5, 6 (2d Cir. 2012) (affirming dismissal

where "[t]he complaint's factual allegations belie [its] legal conclusion[s]").

In fact, by the time the MGC voted to grant the license, its Investigations and

Enforcement Bureau ("IEB") had published a report detailing the ownership of FBT, including

the criminal histories and interests of Messrs. DeCicco and Lightbody, and the backdating issues

referenced in the complaint.  *See* 12/6/13 Report of Suitability ("Report") (attached hereto as

Exhibit A to Maynard Decl.).[4]  As noted below, all allegations related to the "scheme" to hide

the owners' interests were disclosed **before** the MGC voted to award the license to Wynn MA.

| Allegation (Amended Complaint) | IEB Report |
|---|---|
| Application "materially false and misleading" because included contract where FBT attested no cause for it to be found unsuitable. Involvement of criminals made FBT unsuitable.  ¶¶ 90-91. | "DeCicco was charged in criminal schemes including a 1995 arson of a warehouse. Although acquitted of that charge, DeCicco was convicted of related insurance fraud and forgery crimes relating to that incident." 52. Lightbody is a "convicted felon." 55. |
| DeNunzio backdated FBT 2012 Operating Agreement to indicate that DeCicco did not have an ownership interest in FBT. ¶ 92. | "Dustin DeNunzio later admits he created the 2012 Operating Agreement [in which no interest of DeCicco is listed] in January 2013." 57. |
| DeCicco executed a memorandum of Transfer dated "April ___2012" in which he transferred all his interests to Lightbody. ¶ 92. | "[A] document which purports to be a 'Memorandum of Transfer' of all residual rights and membership interests that DeCicco has in FBT Realty, LLC to Lightbody which is simply dated 'April __ 2012.'" 57. |
| FBT backdated a memorandum of transfer and promissory note to show Lightbody's interest expired on December 14, 2012. ¶ 94. Documents further backdated to August 15, 2012. ¶ 97. | "Promissory Notes dated August 15 and December 14, 2012, and Memoranda of Transfer dated August 15 and December 14, 2012 . . . in fact, may very well not have been prepared or executed on the depicted dates." 86. "Dustin DeNunzio testified he prepared these documents in July 2013, not August 2012." 66. |
| Lightbody had recourse against | "Gattineri also suggests that if he fails to satisfy the |

---

[4]     The Court can take judicial notice of the Report of Suitability as a public record.  *See In re Vertex Pharms. Inc., Secs. Litig.*, 357 F. Supp. 2d 343, 352 n.4 (D. Mass. 2005).  According to the Report, "[t]housands of pages of documentary materials have been subpoenaed, acquired or otherwise reviewed, dozens of persons have been interviewed in both Massachusetts and Nevada, hours of tape recordings and hundreds of pages of sworn testimony have been conducted during the course of this inquiry." Report at 47-48.

| | |
|---|---|
| Gattineri in the event Gattineri defaulted on the note, so he maintained a reversionary interest in FBT.  ¶ 98.  Ownership "confirmations" of Gattineri, Lohnes, and DeNunzio, as well as revised contract between WRL and FBT were materially false because did not show Lightbody's interest.  ¶¶ 98, 116, 117. | terms of the suspicious promissory note and transfer memorandum, Lightbody has foreclosure recourse against him . . . and thus a possibility of some reversionary interest in the FBT property."  79.  "Charles Lightbody, a convicted felon, may have retained an interest in the Everett property well after the applicant had been advised that he had been removed. . . . Similarly, Charles Lightbody may have a legal reversionary interest in the event Anthony Gattineri does not repay his promissory note obligations."  86. |

Only three of the alleged Count I misrepresentations were not included in the Report.
First, Plaintiff alleges that Mr. Russo had an undisclosed interest in FBT.  Am. Compl. ¶ 115.
But the complaint itself notes that this interest was publicly disclosed, at the latest, in December
2013, **prior to** the MGC awarding Wynn Resorts the license.  *Id.* at ¶ 114; *see also* 9/8/14 MGC
Tr. at 15-20 (attached hereto as Exhibit B to Maynard Decl.) (IEB stating that Mr. Russo would
receive a 3% fee).  Second, Plaintiff alleges that the revised agreement with FBT required Wynn
Resorts to pay for certain remediation costs and "it is not clear that the illusory nature of the
price reduction was disclosed to the Gaming Commission."  Am. Compl. ¶ 112.  But the
Amended Complaint itself states that the revised agreement was disclosed to the MGC **prior to**
awarding Wynn Resorts the license.  *See id.* at ¶ 119 (noting "the revised agreement that *had
been presented to and approved by the Gaming Commission* in December 2013"); Report at 88
("A copy of the agreement has been provided to the IEB and must be approved by the MGC.").

The only allegation not before the MGC when it awarded the license was that "DeSalvio
entered into a secret side agreement with Gattineri, promising to make him whole by giving him
value equivalent to his share . . . of the gap between the original price and the revised lower price
for the Everett site."  Am. Compl. ¶ 118.  First, failure to disclose this purported side agreement
does not constitute an actionable misrepresentation under the federal mail fraud statute.  Second,
and more importantly, there is absolutely no allegation that Mr. Wynn was aware of, or

10

participated in, this side agreement or the failure to disclose it.[5]

###### E. Count II Should Be Dismissed Because The RICO "Person" And RICO "Enterprise" Are One And The Same

The second count of the Amended Complaint should be dismissed because of well-settled law that "the 'person' identified under § 1962(c) must be distinct from the 'enterprise.'" *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 448 (1st Cir. 2000); *see also Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir. 1996) ("[T]he unlawful enterprise itself cannot also be the person the plaintiff charges with conducting it.").  Plaintiff's attempt to skirt this principle by bringing its second claim for relief against "all of the Wynn Defendants other than Wynn MA" fails because the RICO "persons"—Wynn Resorts Limited, Mr. Wynn, Ms. Sinatra, and Mr. Maddox—and the purported RICO "enterprise"—Wynn MA—are one and the same.  The fiction of the subsidiary acting as an independent enterprise should be disregarded.

In *Bessette*, the First Circuit considered a similar situation where plaintiff alleged that a subsidiary corporation was the RICO "person" and a parent corporation was the RICO "enterprise."  *See* 230 F.3d at 448.  The court noted that, for purposes of RICO, it would disregard the distinction between parent and subsidiary unless "the parent's activities are sufficiently distinct from those of the subsidiary at the time that the alleged RICO violations occurred."  *Id*. at 449.  The First Circuit found that "[t]he failure to allege that [the subsidiary] took actions independent of [the parent was] fatal to the appellant's claims. . . . Without further allegations, the mere identification of a subsidiary and a parent in a RICO claim fails the distinctiveness requirement."  *Id*.  The same result applies in this case, where Plaintiff has made

---

[5] To the extent Plaintiff argues that the actionable misrepresentations relate not to statements that criminals did not have an interest in FBT when, in fact, criminals did have an interest in FBT, but to Wynn Resorts' knowledge thereof, the argument is foreclosed by the language of the Amended Complaint itself: "in July 2013, the Wynn Defendants were known to the Gaming Commission to have associated with known felons **and to have failed to disclose those affiliations.**" Am. Compl. ¶ 110 (emphasis added).

no attempt to distinguish Wynn Resorts Limited from Wynn MA.  To the contrary, Plaintiff

affirmatively pled that Wynn Resorts Limited and Wynn MA function as one unit:

> Wynn Resorts was not a passive owner of Wynn MA, which had no autonomous
> management team of its own given decision making discretion. Rather, all
> significant decisions of Wynn MA, including without limitation its decisions to
> engage in the criminal and/or tortious acts set forth herein, were made for it by
> Wynn Resorts and Wynn Resorts' own senior management team, including the
> individual defendants herein.

*See* Am. Compl. ¶ 18.

Plaintiff's effort to distinguish the individual defendants from the purported RICO

"enterprise" also fails.  The *Bessette* plaintiff also pled that employees were the RICO "persons"

and the corporation was the "enterprise."  In affirming dismissal, the First Circuit held that

because the employees were acting solely in the interest of their employer, they were not

"distinct" from the enterprise.  *Id.* at 449-50 (citing *Riverwoods Chappaqua Corp. v. Marine

Midland Bank*, 30 F.3d 339, 344 (2d Cir. 1994) ("[W]here employees of a corporation associate

together to commit a pattern of predicate acts in the course of their employment and on behalf of

the corporation, the employees in association with the corporation do not form an enterprise

distinct from the corporation.")).  Here, the allegedly fraudulent acts undertaken by the

individual defendants were done for the purpose of securing the Massachusetts Gaming License

for Wynn MA—in other words, on behalf of the corporation.   *See also Mear v. Sun Life Assur.

Co. of Canada (U.S.)/Keyport Life Ins. Co.*, No. 06-cv-12143, 2008 WL 245217, at *9 (D. Mass.

Jan. 24, 2008).  Accordingly, Plaintiff has failed to plead the existence of an enterprise, and

Count II of the Amended Complaint should be dismissed.

### F.  **Plaintiff's RICO Conspiracy Claim Fails**

Plaintiff's failure to plead a substantive RICO claim dictates that the RICO conspiracy

claim should also fail.  *See Efron*, 223 F.3d at 21 ("A conspiracy claim under section 1962(d)

may survive a *factfinder's* conclusion that there is insufficient evidence to prove a RICO

violation, but if the pleadings do not state a substantive RICO claim upon which relief may be

granted, then the conspiracy claim also fails." (emphasis in original) (citations omitted)); *Langan*

*v. Smith*, 312 F. Supp. 3d 201, 208 (D. Mass. 2018) (same).

III.   **Regardless Of Whether Plaintiff States A Claim Against Other Defendants, The RICO Claims Against Mr. Wynn Fail Because Plaintiff Has Not Alleged Two Racketeering Acts By Mr. Wynn**

The RICO counts should be dismissed for the independent reason that, with respect to

Mr. Wynn in particular, the Amended Complaint fails to allege two racketeering acts.  *See Aetna*

*Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1560 (1st Cir. 1994) ("In order to establish a

pattern of racketeering activity, the evidence must show that **each defendant** committed **two**

**acts** of racketeering activity . . . ." (emphasis added)).

A.   **Under Rule 9(b), The Court Should Disregard All Allegations Against Wynn Resorts, Wynn MA, and "All Defendants" In Assessing Mr. Wynn's Liability**

Rule 9(b) applies where mail and wire fraud are alleged as predicate acts.  *See New*

*England Data Servs., Inc. v. Becher*, 829 F.2d 286, 290 (1st Cir. 1987).  Further, "[t]he First

Circuit has repeatedly held that 'RICO claims premised on mail or wire fraud must be

**particularly scrutinized** because of the relative ease with which a plaintiff may mold a RICO

pattern from allegations that, upon closer scrutiny, do not support it.'"  *The Roxbury/S. End*

*Tenants' Council, Inc. v. Cornerstone Corp.*, 573 F. Supp. 2d 359, 368 (D. Mass. 2008)

(emphasis added).  Where multiple defendants are named in the complaint, "**each defendant's**

**role must be particularized** with respect to their alleged involvement in the fraud."  *Kuney*

*Int'l, S.A. v. Dilanni*, 746 F. Supp. 234, 237 (D. Mass. 1990) (emphasis added).

Nearly all of Plaintiff's claims against Mr. Wynn are based on generalized allegations

regarding **Wynn Resorts' or Wynn MA's** statements/omissions to the MGC.  But Wynn

13

Resorts' and Wynn MA's conduct cannot be attributed to Mr. Wynn simply because he was the CEO of Wynn Resorts.  *See Escude Cruz v. Ortho Pharm. Corp.*, 619 F.2d 902, 907 (1st Cir. 1980) ("What is required is some showing of direct personal involvement by the corporate officer in some decision or action which is causally related to plaintiff's injury."); *see also Nat'l Grp. for Commc'ns & Computers, Ltd. v. Lucent Techs. Inc*., No. 03-cv-6001, 2004 WL 2903745, at *3 (S.D.N.Y. Dec. 15, 2004) ("The standard for liability in a civil RICO action is no exception to the general rule requiring individual involvement in order to subject a corporate officer to liability, and requires personal involvement by each defendant."); *Toyz, Inc. v. Wireless Toyz, Inc.,* 799 F. Supp. 2d 737, 748 (E.D. Mich. 2011).

Nor can Plaintiff, as it has attempted, "lump[] all the defendants together as a unitary force."  *See Jones v. Experian Info. Sols., Inc*., 141 F. Supp. 3d 159, 162 (D. Mass. 2015).  The Plaintiff's allegations regarding all "Defendants" and all "Wynn Defendants" that are not specific to Mr. Wynn himself should be disregarded because such allegations are simply "too conclusional to satisfy the particularity requirement" as to Mr. Wynn.  *See TLH Int'l v. Au Bon Pain Franchising Corp.*, No. 86-cv-2061, 1986 WL 13405, at *7 (D. Mass. Nov. 13, 1986) (dismissing RICO complaint that failed to specify which conduct was attributable to which defendant); *Rick v. Profit Mgmt. Assocs., Inc.*, 241 F. Supp. 3d 215, 224 (D. Mass. 2017).

For example, Plaintiff alleges that "Maddox, Sinatra, and Steve Wynn were each involved in preparing, submitting **and/or** directing the preparation and submission of these fraudulent applications knowing of their falsity."  Am. Compl. ¶ 91 (emphasis added).  This allegation fails because it does not specify Mr. Wynn's involvement in any misrepresentation.  *See Loan v. Fed. Deposit Ins. Corp.*, 717 F. Supp. 964, 968 (D. Mass. 1989) (dismissing claims where complaint alleged "defendants caused [the fraudulent document] to be prepared and

circulated" but did not allege the individuals "actually prepared, signed or even read the [document]"); *Metro. Prop. & Cas. Ins. Co. v. Savin Hill Family Chiropractic, Inc*., No. 15-cv-12939, 2016 WL 11004383, at *3 (D. Mass. June 15, 2016).

### B.  The Macau Allegations Are Not Racketeering Acts

The various allegations regarding the Macau casinos, *see* Am. Compl. ¶¶ 39-52, should be disregarded because they do not state any RICO predicate acts.  The only question is whether Mr. Wynn made any *material misrepresentations* regarding the Macau operations, not whether, for instance, the Macau casino did due diligence on the subjunkets.  *See id.* at ¶ 43.  Plaintiff alleges with specificity the *content* of Mr. Wynn's *statements* regarding Macau, but does not allege that those statements are *misrepresentations,* or *how they are misrepresentations*.  Mr. Wynn's statements are either opinions ("And if we're sloppy and we allow people who are engaged in criminal activity to do business with us, we should be criticized for it and held responsible."), or general business philosophies ("Do we allow illegal activity in our casinos? The answer is no, no.  Do we do everything that you can reasonably do to stop it? Yes.").[6]  *See id.* at ¶ 124.  These statements cannot be materially false and fraudulent, as is required for mail and wire fraud.  Nor do the allegations that, on a few occasions, criminal activity was detected in Macau, transform Mr. Wynn's musings into federal crimes.

Plaintiff also alleges that Mr. Wynn stated that, with respect to Macau's transfer of Cotai land rights: (1) "everything was done verbally"; (2) "they're not as contract oriented in China"; and (3) "[t]hat whole culture is relationship driven."  Am. Compl. ¶ 128.  Yet the Amended

---

[6]     The Amended Complaint also alleges that Mr. Wynn stated "[ ] we are obeying all of the rules and regulations of Macau and employing all of the standard and ethical standards for which we are known . . . ."  Am. Compl. ¶ 124(b).  To the extent this is a substantive statement and not simply filler, the Amended Complaint fails to allege *how* the Wynn Defendants violated Macau regulations.  *See id*. at ¶¶ 46-47 (referencing the Wynn Defendants' "contravention of Macau . . . law and gaming regulations" without any allegation as to what law was "contravened.")

Complaint does not dispute the truth of Mr. Wynn's statement.  On the contrary, it acknowledges

that "the records do not show any evidence that Tien Chiao . . . ever had rights to the land," and

that "[r]ecords produced by [the Macau government] show Wynn Macau SA as the earliest

documented applicant for the land rights."  *Id.*[7]  "Once again, *the complaint itself* belies

plaintiff['s] claims . . . ."  *Brill v. United States*, No.10-05104, 2011 WL 249740, at *3 (N.D.

Cal. Jan. 26, 2011) (emphasis in original).  Of course, Mr. Wynn's opinions that Macau business

is "relationship driven" and not "contract oriented" are not punishable as federal crimes.[8]

### C.  The Remaining Allegations Do Not Specify Racketeering Activity By Mr. Wynn

Once the allegations against "all defendants," and the Macau allegations are disregarded,

it is apparent that the balance of the allegations against Mr. Wynn are extraneous filler.  None of

these scattershot allegations make out RICO predicate racketeering acts.

**First**, the allegation that Mr. Wynn called Mr. Crosby ex parte on two occasions is

irrelevant.  Although the Amended Complaint alleges that such ex parte communications were

violations of the Massachusetts Gaming Act, it does not allege that these ex parte

communications were misrepresentations.  Nor could the ex parte communications with the

MGC constitute any kind of RICO predicate act.

**Second,** the allegation that, in 2016, Mr. Wynn called Mayor DeMaria to discuss a

business located on a piece of land Wynn Resorts desired, Am. Compl. ¶ 108, is irrelevant since

there is no allegation that Mr. Wynn participated in or was aware of any quid pro quo.

**Third,** the various allegations that Mr. Wynn engaged in personal misconduct, *see, e.g.,*

---

[7]     It is worth noting that the 2013 IEB Report states that there was a public allegation that "Wynn Resorts may have acted improperly in connection with the company's acquisition of the land for its Cotai project. Based on this allegation, this matter was thoroughly examined by the IEB, and no impropriety on the part of Wynn Resorts involving its Cotai land acquisition was found."  Report at 17 n.2.

[8]     The "misrepresentations" are also not racketeering activity because the Plaintiff has not alleged any connection between Mr. Wynn's statement at the interview with IEB and the use of the mails or interstate wires.

Am. Compl. ¶ 36, do not amount to a RICO predicate act.  Plaintiff does not connect these

unproven allegations to any misrepresentations by Mr. Wynn that could constitute mail or wire

fraud.  Plaintiff has not, for instance, alleged that the MGC actually asked (which it did not) Mr.

Wynn if he ever settled claims related to allegations of personal misconduct.

**Fourth**, the allegation that, when Mr. Wynn was asked if he knew the owners of FBT

had criminal histories and he replied "Steve Wynn, under oath, zero," Am. Compl. ¶ 100, is not a

racketeering act because, unlike with Sinatra and Maddox, Plaintiff never alleges that Mr. Wynn

*knew*[9] the histories of the FBT owners.  Nor does Plaintiff plead any facts suggesting *how* Mr.

Wynn acquired such information.[10]  Further, with respect to this statement at an IEB suitability

interview, Plaintiff does not allege use of the mails or interstate wires.

**Fifth**, Plaintiff disingenuously alleges that the MGC application required Mr. Wynn to

"identify any company in which he had held an ownership interest of 5% or more" and that Mr.

Wynn "omitted to disclose the wholly-owned shell company, Entity Y LLC, he had used for the

$7.5 million payoff."  Am. Compl. ¶ 147.  Plaintiff's clever wording ("the" instead of "his")

should not fool the Court—Plaintiff nowhere states that Mr. Wynn himself wholly-owned Entity

Y, but simply that Entity Y was wholly owned by *someone*.  Because Plaintiff does not allege

that Mr. Wynn owned Entity Y (which he does not), Mr. Wynn did not have a duty to disclose

Entity Y, and there is no misrepresentation that could constitute mail or wire fraud.[11]

**Sixth**, Mr. Wynn's statement in 2013 to the MGC that "our history in Las Vegas has been

---

[9]     A conclusory allegation of knowledge would be insufficient because "[t]he courts have uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity, unless the complaint *also* sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009).
[10]    That Mr. Lightbody "open[ed] the Everett Site gates" for Mr. Wynn, Am. Compl. ¶ 56, does not bolster the claim that Mr. Wynn participated in a misrepresentation to the MGC or show Mr. Wynn knew of Mr. Lightbody's criminal history.
[11]    The allegation constitutes a Rule 11 violation of which Plaintiff's counsel has been placed on notice.

exemplary, spotless in every regard," Am. Compl. ¶ 130, cannot constitute an actionable

misrepresentation because Plaintiff does not assert that the statement, when made, was untrue.

Instead, Plaintiff asserts that *after* the statement was made it became untrue when Nevada

penalized Wynn Resorts in 2019.  Further, the statement is not actionable because Plaintiff did

not allege the use of the mails or interstate wires.

IV.     **The State Law Claims Should Be Dismissed**

Plaintiff's state law claims should be dismissed because: (1) the Amended Complaint

fails to state a claim for relief under either Mass. Gen. L. c. 93A or for tortious interference; and

(2) the Amended Complaint fails to state the fraud underlying the state law claims with

particularity as required by Rule 9(b).

A.     **Plaintiff Fails To State A Chapter 93A Claim**

To state a claim under Chapter 93A, there must be "a commercial transaction between a

person engaged in trade or commerce with another person engaged in trade or commerce."

*Szalla v. Locke*, 421 Mass. 448, 451 (1995).  Plaintiff fails to plead that Mr. Wynn—or Wynn

Resorts—engaged in a commercial transaction that led to its alleged injury.  All of the allegedly

"unfair" or "deceptive" acts in the Amended Complaint relate to representations to the MGC.

But the MGC is not a "person engaged in trade or commerce."  *See Mastoran Rests., Inc. v.

Commonwealth Div. of Capital Asset Mgmt.*, No. 001998-BLS, 2001 WL 1811963, at *5 (Mass.

Super. Dec. 31, 2001) (state agency not "person" engaged in "trade or commerce").

Further, Plaintiff has not alleged any "commercial transaction" between itself and Wynn

Resorts, or with Mr. Wynn.  The fact that both Wynn Resorts and Plaintiff's potential tenant,

Mohegan, were applying for a gaming license did not create a commercial transaction between

Wynn Resorts and Mohegan, much less between Wynn Resorts and Plaintiff, or Mr. Wynn and

Plaintiff.  *See Mastoran*, 2001 WL 1811963, at \*5 ("That . . . two [entities] are each bidding for contracts with [a third party] does not make them involved in a commercial transaction with each other.").  In *Mastoran*, the plaintiff developer alleged that a competing developer engaged in unfair practices during the bidding process for a government contract.  The court found that the Chapter 93A claim could not survive because the agency administering the bidding process was not engaged in a "commercial transaction" with the developers, and further that the developers, both competing for a government contract, were not engaged in a commercial transaction with each other.  *Id.*  Here the connection is even further attenuated because it is Plaintiff's tenant, not Plaintiff, who was competing for the same benefit as Wynn Resorts.

B.  **Plaintiff Fails To Plead Its Tortious Interference Claims**

Plaintiff fails to allege that Mr. Wynn or Wynn Resorts interfered in any business or contractual relationship.  First, Mr. Wynn could not have interfered with Plaintiff's and Mohegan's contractual relationship, because there is no allegation that Mohegan breached its contract.  *See Psy-Ed Corp. v. Klein*, 459 Mass. 697, 716-17 (2011) ("For [defendant] to be held liable for tortious interference, it must be proved that there existed a relevant contract . . . [and] that [defendant] caused one or more parties to that contract to 'break' (i.e., breach) it . . . .").  Plaintiff's contract with Mohegan was conditioned upon Mohegan securing the MGC license.  *See* ECF 17 at 11 n.25 (citing and attaching as Ex. 4 Plaintiff's agreement with Mohegan).  Because Mohegan did not obtain the license, it was under no obligation to perform.  *See Klein*, 459 Mass. at 718 (defendant not liable for tortious interference if third party did not have legal obligation to perform); *see also Harrison v. NetCentric Corp.*, 433 Mass. 465, 478-79 (2001).

Second, the Amended Complaint fails to allege that Mr. Wynn interfered with Plaintiff's relations with Mohegan.  Instead, the Amended Complaint alleges that Wynn Resorts made

19

misrepresentations to the MGC, a third party, which was not privy to the relationship between Plaintiff and Mohegan. *See Hunneman Real Estate Corp. v. Norwood Realty, Inc.*, 54 Mass. App. Ct. 416, 427 (2002) (statement directed to someone other than plaintiff's prospective business partner which did not cause the prospective business partner "not to enter into or continue the prospective relation" did not constitute a claim for interference); *Dawson v. N.Y. Life Ins*. Co., 932 F. Supp. 1509, 1545 (N.D. Ill. 1996) ("[T]ortious interference requires conduct directed at the third party with whom the plaintiff entertains a business expectancy."); *Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1104 (N.Y. 2004) ("[C]onduct constituting tortious interference with business relations is, by definition, conduct directed . . . at the party with which the plaintiff has or seeks to have a relationship.").

### C.  **The Fraud Underlying The State Law Claims Is Not Pled With Particularity**

Rule 9(b)'s heightened pleading requirement also applies to Plaintiff's state law claims premised on fraud. *See N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 14 (1st Cir. 2009).  For the reasons set forth in Section II(A), the Amended Complaint fails to sufficiently describe Mr. Wynn's fraudulent conduct.  As with the RICO claims, the state law claims should also be dismissed pursuant to Rule 9(b).

**CONCLUSION**

For the foregoing reasons, Mr. Wynn respectfully requests that this Court dismiss the Amended Complaint with prejudice.  To the extent the other defendants' motions raise arguments not inconsistent with those contained herein, Mr. Wynn adopts those arguments.

Respectfully submitted,

STEPHEN A. WYNN

By his attorneys,

/s/ Brian T. Kelly
Brian T. Kelly (BBO No. 549566)
Joshua C. Sharp (BBO No. 681439)
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02114
617-345-1000
bkelly@nixonpeabody.com
jsharp@nixonpeabody.com

Dated:  March 8, 2019

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the forgoing was filed electronically on March 8, 2019, and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

/s/ Joshua C. Sharp
Joshua C. Sharp