UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **STERLING SUFFOLK RACECOURSE, LLC,** <br><br> v. <br><br> **WYNN RESORTS, LTD, et al.** <br><br> **Defendants.** | Civil No: 18-CV-11963-PBS <br><br> Leave to file granted April 22, 2019 |

**FBT EVERETT REALTY LLC'S REPLY TO STERLING SUFFOLK RACECOURSE'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

Allegations that are colorful and verbose are not the same thing as allegations that are plausible and particularized. And, no matter how inflammatory, allegations that do not describe "racketeering activity," 18 U.S.C. § 1961(1), cannot be the basis for a civil RICO claim.

Sterling's amended complaint—which seeks to recover billions of dollars based entirely on the supposition that Wynn Resorts fraudulently obtained a casino license for which Sterling *was not even competing*—suffers from so many fatal defects, some more glaring than others, that it would be impossible to brief them all. As a general matter, FBT is content to rest on its opening brief and adopt the briefs filed by the other defendants. FBT does, however, wish to emphasize a handful of points regarding Sterling's RICO claims, which represent Sterling's sole basis for federal subject matter jurisdiction in this case.

**First**, contrary to what Sterling insinuates at page 47 of its consolidated opposition brief, FBT has not "conceded" any of Sterling's allegations of misconduct. What FBT argued in its opening brief is that, *even if assumed to be true*, Sterling's allegations that FBT made misrepresentations to the Massachusetts Gaming Commission ("MGC") during the casino licensing process do not describe "racketeering activity" under 18 U.S.C. § 1961(1). Thus, even

1

aside from the fact that they are inadequately pled under Rule 9(b), Sterling's allegations of such misconduct do not assist Sterling in pleading cognizable civil RICO claims.

**Second**, the association-in-fact RICO enterprise that Sterling alleges as the basis for its First and Third Claims for Relief is both implausible and inadequately pled. Beyond a few formulaic and conclusory allegations—which are insufficient "'to establish the existence of an enterprise' under the RICO statute," *Harihar v. United States Bank Nat'l Ass'n*, No. 15-cv-11880-ADB, 2017 U.S. Dist. LEXIS 50596, at *34 (D. Mass. March 31, 2017) (quoting *In re Patchell*, 336 B.R. 1, 14 (Bankr. D. Mass. 2005))—Sterling's complaint does not even *attempt* to plead facts that would satisfy the "three structural features" required by the Supreme Court's decision in *Boyle v. United States*, 556 U.S. 938, 946 (2009). This is unsurprising, given the tinfoil-hat nature of Sterling's association-in-fact hypothesis.

**Third**, Sterling's arguments that the amended complaint describes violations of the Travel Act's "gambling" provision and state law "gambling" felonies are completely unsupported by the case law. The cases that Sterling relies on at pages 37-41 of its brief involved defendants who had (1) illegally "infiltrate[ed] and obtain[ed] control of [a casino] and a 'skimming operation,'" *United States v. DeLuna*, 763 F.2d 897, 924 (8th Cir. 1985); (2) "maintain[ed] a secret and illegal role in the ownership, operation, conducting and carrying on of the gaming operations of [a] hotel casino," *United State v. Goldfarb*, 643 F.2d 422, 426 (6th Cir. 1981); (3) operated a "business enterprise" that "was aimed at illegally manipulating and collecting various jackpots" at Las Vegas and Reno casinos, *United States v. Vaccaro*, 602 F. Supp. 1132, 1134 (D. Nev. 1985); and (4) engaged in the fraudulent "collection of illegal gambling debts" in violation of Georgia state law, *Kemp v. AT&T*, 393 F.3d 1354, 1357 (11th Cir. 2004). In short, in each of the cases that Sterling relies upon, the defendants illegally participated in core gambling activities, either as a

clandestine and unlicensed operator, a cheating player, or an unlawful debt collector. Here, by contrast, Sterling's theory is that Wynn Resorts will *in the future* openly and obviously operate the Encore Casino Hotel, albeit using a casino license that Sterling believes Wynn Resorts obtained through misrepresentations to the MGC years ago. Sterling's *present* RICO claim, however, cannot be based on Wynn Resorts's *future operation* of a Massachusetts casino.

**Fourth**, Sterling cannot state a mail or wire fraud offense by alleging that it lost out on future rental income as a downstream consequence of the MGC awarding Wynn Resorts, rather than Mohegan Sun, the Region A casino license. The reason that Sterling's complaint fails to state a mail or wire fraud offense is because Defendants' alleged deception of the MGC to help Wynn Resorts win the Region A casino license *is categorically not a mail or wire fraud offense* under the Supreme Court's decision in *Cleveland v. United States*, 531 U.S. 12 (2000). Whether Sterling (or others) suffered some downstream economic consequences as a result of the MGC's licensing decision is beside the point. Under *Cleveland*, the federal government could not prosecute Defendants for mail or wire fraud based on their alleged scheme to deceive the MGC. As a matter of basic logic, that same conduct cannot constitute a mail or wire fraud predicate for purposes of a civil RICO lawsuit.[1] Sterling cannot escape this result by pointing to its wholly conclusory allegation that "but for the defendants' wrongdoing the MSM/SSR application for the License would have been granted." Sterling Opp., at 46.

---

[1] The Supreme Court's decision in *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008), does not help Sterling on this issue. *Bridge* holds only that a plaintiff who suffered foreseeable injury as a result of the defendant's "pattern of mail fraud" involving misrepresentations to a third party has standing to sue under RICO. *Id.* at 658-659. As stated above, Defendants' alleged deception of the MGC was not, and could not have been, a mail or wire fraud at all under *Cleveland*. *Bridge* is therefore inapposite.

**Fifth**, with respect to the honest services fraud allegations involving Mayor DeMaria, Sterling's creative storytelling in its opposition brief cannot make up for the total absence of particularized allegations in its amended complaint. The amended complaint's honest services fraud allegations do not come remotely close to satisfying Rule 9(b), and the alleged honest services fraud predicate must therefore be completely disregarded in assessing whether Sterling's amended complaint pleads a "pattern" of racketeering activity.

**Sixth**, Sterling's arguments regarding RICO's "pattern" element either misunderstands or misrepresents First Circuit precedent. Sterling cannot establish a "pattern" under *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 19 (1st Cir. 2000), by alleging that Wynn Resorts was "incentivized to affirmatively lie as might be necessary not only to prevent exposure of lies during the License acquisition process in 2013 and 2014, but to prevent exposure of other misconduct that was still ongoing." Sterling Opp., at 61. Rather, Sterling must plead facts showing that the alleged RICO enterprise would continue to engage in *racketeering activity* related to that which occurred in 2013 and 2014. *See id.* at 20 ("Had Efron argued that the defendants planned to operate the hotel indefinitely at a paper loss *as a means of perpetually defrauding him*, rather than asserting the specific objective of squeezing him out of the Partnership, he would have had a strong argument for an open-ended RICO pattern." (emphasis added)). Sterling has utterly failed to do so. This is particularly true with respect to the association-in-fact enterprise that underlies the two RICO claims that Sterling has lodged against FBT. FBT is a single purpose real estate investment entity with no involvement in the Encore and, since the sale of the Everett Parcel, no relationship whatsoever with Wynn Resorts. Sterling cannot plausibly allege that an association-in-fact enterprise between FBT and the various Wynn defendants posed a threat of continued *existence*, let alone a threat of indefinite racketeering activity.

74612566_2

*******

At the end of the day, Sterling's allegations amount to a political complaint that the MGC made the wrong choice in awarding the Region A casino license to Wynn Resorts rather than Mohegan Sun.  Sterling's recourse, however, should be either the political process or to intervene in Mohegan Sun's pending state court lawsuit against the MGC, which alleges that the MGC treated Mohegan Sun unfairly.  Sterling should not be allowed to use a civil RICO lawsuit as a basis to conduct in federal court a hypothetical "do-over" of the Region A casino licensing competition, particularly where Sterling was not even a direct participant in that competition.

## CONCLUSION

For the reasons stated above, and the reasons stated in FBT's opening brief and the other defendants' briefs, Sterling's amended complaint should be dismissed with prejudice.

DATED: April 22, 2019                                         Respectfully submitted,

                                                         /s/ Aaron M. Katz
Joshua S. Levy (BBO# 563017)
Joshua.Levy@ropesgray.com
Aaron M. Katz (BBO# 662457)
aaron.katz@ropesgray.com
Ropes & Gray LLP
800 Boylston Street
Boston, MA 02199
Telephone: (617) 951-7000

Christopher Weld, Jr.
cweld@toddweld.com (BBO# 522230)
Christian G. Kiely (BBO# 684308)
ckiely@toddweld.com
Todd & Weld LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2600

5

## **CERTIFICATE OF SERVICE**

    I, Aaron M. Katz, hereby certify that, on April 22, 2019, true and accurate copies of the foregoing were served on counsel for all parties through ECF.

/s/ Aaron M. Katz
Aaron M. Katz

74612566_2