# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| STERLING SUFFOLK RACECOURSE, LLC,<br><br>                  Plaintiff,<br><br>v.<br><br>WYNN RESORTS, LTD; WYNN MA, LLC; STEPHEN WYNN; KIMMARIE SINATRA; MATTHEW MADDOX; PAUL LOHNES; and FBT EVERETT REALTY, LLC;<br><br>                  Defendants. | CIVIL ACTION<br>Case No. 1:18-cv-11963-PBS<br>(Leave to file granted 4.23.19) |

## WYNN RESORTS, LTD AND WYNN MA, LLC'S
## REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

**WYNN RESORTS, LTD and WYNN MA, LLC**

By their counsel,

/s/ Peter A. Biagetti
Peter A. Biagetti, BBO # 042310
Samuel M. Starr, BBO #477353
Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.
One Financial Center
Boston, MA 02111
Phone: 617.542.6000
Fax: 617.542.2241
PABiagetti@mintz.com
TStarr@mintz.com

Mark Holscher (*admitted pro hac vice*)
Kirkland & Ellis LLP
333 South Hope Street
Los Angeles, CA 90071
Phone: 213-680-8190
Fax: 213-808-8097
Mark.holscher@kirkland.com

April 24, 2019

Wynn Resorts, LTD ("Wynn Resorts") and Wynn MA, LLC ("Wynn MA") respectfully submit this Reply to Sterling Suffolk Racecourse's ("SSR's") Opposition to their Motion to Dismiss. SSR's 90 pages of Opposition, like its overhauled Complaint, offers no timely or cognizable claims of RICO pattern, enterprise, or injury. This Court therefore should dismiss those and their equally flawed companion state-law claims with prejudice.

### A. The Statute of Limitations Ran in December 2017, Not on a Sunday in September 2018.

SSR wrongly claims that Wynn Resorts and Wynn MA have argued that the statute of limitations ran on September 16, 2018—four years after the MGC's vote to award the Region A license to Wynn MA, Doc. 98 at 25—and then notes simply that, because September 16, 2018 was a Sunday, Fed. R. Civ. P. 6(a)(1)(C) extended the statute of limitations to *Monday* September 17, 2018—the day SSR filed. But that blithe miniaturization of Wynn Resorts and Wynn MA's position misses the central argument—that the statute of limitations began to run when SSR first knew of its injury, in December 2013. SSR does not dispute that the statute of limitations begins to run when the plaintiff is injured and that injury is knowable. Doc. 76 at 8; Doc. 98 at 26. Nor does SSR dispute the essential sequence of events on which the Motion to Dismiss is based. Briefly, the first allegedly fraudulent misrepresentation to the Massachusetts Gaming Commission ("MGC") was made on January 15, 2013, when Wynn MA submitted its Phase-I application. First Amended Complaint ("FAC") ¶¶ 91, 95. Another allegedly fraudulent submission occurred in July 2013, when Wynn Resorts and Wynn MA officials testified that they did not know Lightbody, a convicted felon who had been involved with FBT. FAC ¶ 100. But, "in July 2013, the Wynn Defendants were known to the Gaming Commission to have associated with known felons and to have failed to disclose those affiliations." FAC ¶ 110. The Boston Globe even carried a story noting that Lightbody had an "interest in the Everett site" on

November 21, 2013. FAC ¶ 112. In December 2013, the MGC nevertheless found Wynn MA and Wynn Resorts suitable, and allowed Wynn MA to proceed to Phase II. Doc. 76-1 at 10. On September 16, 2014, the MGC held its final vote at Phase II and awarded the Region A license to Wynn MA. FAC ¶ 139.

Despite these acknowledgements, SSR still argues that its injury did not occur until the Region A license was awarded, Doc. 98 at 26, rather than when the alleged fraud was perpetrated on the MGC. Doc. 76 at 9. In support of its argument, SSR cites only *Kripp v. Luton*, 466 F.3d 1171, 1178 (10th Cir. 2006), a case which merely stands for the undisputed proposition that the statute of limitations begins to run when the defendant knew or should have known of his injury. *See Alvarez-Mauras v. Banco Popular of P.R.*, No. 18-1051, 2019 U.S. App. Lexis 8863, *17 (1st Cir. 2019) ("the RICO statute of limitations begins to run when a plaintiff knew or should have known of his injury.") (internal quotations and citations omitted).[1] But on the facts alleged, that standard does not support—instead it precludes—SSR's claim that its injury accrued when the MGC awarded the Region A license to Wynn MA.

The central wrong that SSR alleges Wynn MA and Wynn Resorts committed was serial concealment—through mail fraud, wire fraud, and other predicate acts—of facts that would render Wynn MA not "suitable" and therefore ineligible to continue participating in the MGC's application process. FAC ¶¶ 140-148. All of these representations by definition occurred prior to, and to induce, the MGC's December 2013 Phase-I suitability determination. Therefore, the alleged injury to SSR that arose from this inducement was that its tenant, MSM, had to compete

---

[1] Similarly, in *Takeuchi v. Sakhai*, 05 CV 6925, 2006 U.S. Dist. Lexis 1286, *4-*6 (S.D.N.Y. Jan. 17, 2006), the court held that the statute of limitations began to run after plaintiff received a letter from an expert stating that a painting the plaintiff bought was a forgery, even though the plaintiff did not believe that it was a forgery at that time, because the expert's letter put the plaintiff on inquiry notice of the fraud. The court stated, "In the case of a RICO claim predicated on fraud, a plaintiff should have discovered his injury when he has received information sufficient to alert a reasonable person to the probability that he has been misled." *Id.* at *6.

at Phase II against an "unsuitable" applicant. Because SSR first knew that MSM would have to compete against "unsuitable" Wynn MA as soon as Wynn MA was found suitable by the MGC—on December 27, 2013—SSR suffered its only actionable injury more than four years and eight months prior to September 17, 2018, the date SSR filed this lawsuit.

SSR's last-ditch effort to save its untimely pleading from dismissal is a claim that the alleged fraud continued even after the MGC found Wynn MA and Wynn Resorts suitable, and even after the MGC awarded the Region A license. Doc. 98 at 27, n.7. But arguments about when the "last" act of racketeering occurred are irrelevant, because the statute of limitations begins running with the *first* predicate act of racketeering, not the last. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 387 (7th Cir. 2010) (RICO plaintiff "should not be entitled to an automatic extension of the statute of limitations by the length of the period of concealment by the defendants.").[2]

### B. Wynn Resorts' Alleged Wrongful Acts in Macau and Nevada Do Not Transform The Single-Purpose Scheme to Obtain the Region A License into a RICO "Pattern."

SSR assures that its amended pleading is "full of well-pleaded factual detail," Doc. 98 at 88, but in so detailing its alleged "pattern," that amendment still confirms that every one of the defendants' alleged deceptions were "all aimed at unfairly obtaining the Region A casino license for the Wynn/FBT group[.]" FAC ¶ 172; *see also* FAC ¶¶ 1, 6, 9, 18, 155, and 161. In its Opposition, SSR similarly describes this goal as "systemically deciev[ing] the unrecused members of the MGC about the true facts" before they made their findings on suitability, Doc. 98 at 12, emphasizing that it seeks to recover only revenue it allegedly "would have received . . .

---

[2] *See Rodriguez v. Banco Cent.*, 917 F.2d 664, 666-667 (1st Cir. 1990) (rejecting a "last predicate act rule" for determining when the statute of limitations begins to run); *Hodas v. Sherburne, Powers & Needham, P.C.*, 938 F.Supp. 60, 63 (D.Mass. 1996).

had the MGC awarded the License to the MSM/SSR proposal." Doc. 98 at 84. SSR now argues, however, that the single "scheme" (singular) set out in its FAC is so "wide-ranging and long-lasting" that it satisfies RICO's continuity requirement. The RICO counts themselves, however and even the cases SSR cites, demonstrate otherwise.[3/]

To inflate this admittedly single-purpose scheme into an actionable one, the Opposition now claims that the FAC's "pattern" somehow embraces the alleged acts that occurred both before Wynn MA's application to the MGC—the alleged misconduct in Macau and Nevada—and after Wynn MA's application to the MGC—the allegedly continuing misconduct in Nevada and cover-up of the fraud on the MGC. Doc. 98 at 79. But on closer inspection, neither the alleged actions in Macau nor those which occurred in Nevada can constitute predicate acts of racketeering. Indeed, SSR itself admits elsewhere in its Opposition that the conduct in Macau is not, and indeed cannot be, a predicate act of racketeering. Doc. 98 at 64 ("The FAC does not allege that violations of local law in Macau were freestanding RICO predicate acts . . . the Wynn Defendants' modus operandi in Macau is highly relevant ***background and context*** for their similar misconduct in Massachusetts.") (emphasis added). As important, nowhere in its two RICO claims does SSR ever allege that any of the acts in Macau or Nevada were part of any

---

[3/] But "a single criminal episode, or event, is not a pattern" even where the "single criminal episode" is composed of several constituent crimes. *Apparel Art Int'l v. Jacobson*, 967 F.2d 720, 722 (1st Cir. 1992). Therefore, even if Wynn MA or Wynn Resorts committed several acts of fraud to secure the gaming license, these could not constitute a pattern of racketeering activity. As explained in *Apparel Art*, 967 F.2d at 722, "For example, a single (interstate) bank robbery . . . consists of several different parts (say, using a gun, threatening a teller, stealing a getaway car, perhaps abducting the teller as well, and eventually lying about participation). Some of those separate parts may themselves constitute separate criminal acts or 'crimes' (in the technical sense that each, separately, violates a specific statute). Yet, those several separate criminal parts, taken together, do not generally make out a 'pattern.'"

In *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 515-517 (S.D.N.Y. 2007), the court held that there was no open ended continuity because the alleged racketeering activity was all in the service of obtaining two licenses to be able to sell certain types of merchandise. *Id.* at 516-517 ("Plaintiff conceded that Defendants' goal was to obtain a limited number of licenses, and 'that's it.' . . . This undercuts Plaintiff's attempt to plead open-ended continuity, as the courts have rejected attempts at open-ended claims involving a terminable scheme, such as the one alleged by Plaintiff here.").

alleged pattern of predicate acts of racketeering. FAC ¶¶ 155, 161. Instead, the First Claim states that the predicate acts of racketeering were only the false representations to the MGC, FAC ¶ 155, while the Second Claim states only that the "predicate crimes" were the *concealment* of the "unsavory activities . . . in Macau," FAC ¶ 161(c), and the concealment—by means of interstate travel to procure false documents, testimony, and certifications to the MGC—of "violations of the Nevada suitability statutes," FAC ¶ 161(d). Tellingly, the FAC never alleges as predicates the acts in Nevada and Macau themselves.

Furthermore, the disparate events alleged in Macau and Nevada could not, as a matter of law, be part of a cognizable pattern of racketeering activity used to obtain the Region A license because they are not sufficiently "related" to the purpose, perpetration, or result of that alleged scheme. The alleged events in Macau are separated from the fraud allegedly perpetrated on the MGC by thousands of miles, several years,[4/] and distinct casts of essential conspirators, just as in *Feinstein*, 942 F.2d at 44-45 ("plaintiffs' RICO claim founders on the bald assertion that these two episodes, nearly two years apart in time, hundreds of miles apart in space, and involving two largely distinct groups of participants, were somehow pieces of a unitary scheme"). *See* FAC ¶¶ 41-52. The events in Nevada—primarily Mr. Wynn's alleged past sexual misconduct—are also separated from the fraud on the MGC by more than a thousand miles, many years, and again, very different alleged collaborators and victims. FAC ¶¶ 36-37. Even after *Feinstein*, which SSR erroneously cites as evidence of a diminished "relatedness" requirement, courts in the First Circuit have continued to dismiss RICO claims which allege predicate acts that were not related. *See MyFreeMedicine.com, LLC v. Alpine Investors*, 739 F. Supp. 2d 8, 28 (D. Maine 2010)

---

[4/] SSR claims that Wynn Resorts' alleged misconduct in Macau began in 2007, FAC ¶ 49, and continued into 2016, FAC ¶ 50.

(predicate acts of racketeering were not related because they had different "participants, victims, [and] methods"). This Court should do the same here.

Next, SSR claims that the alleged conduct in Macau and Nevada "previewed their actions in Massachusetts" and is therefore evidence of Wynn Resorts' "regular way of doing business." Doc. 98 at 21, 69. SSR relies on *Shields Enterprises v. First Chicago Corp.*, 975 F.2d 1290, 1296 (7th Cir. 1992). In *Shields*, however, the court found that there was a threat of the racketeering acts continuing on into the future because the plaintiff alleged that "whenever [the plaintiffs] stood in the way of some goal [the defendant] wanted to accomplish . . ., [the defendant] turned to extortion to accomplish its goal," citing three specific examples of extortion. *Id.* at 1296. The RICO claim alleged here bears no resemblance to an ongoing extortion scheme. Here there is no particularized allegation that Wynn Resorts or Wynn MA have used fraudulent representations to secure a gaming license in any other instance, nor any well-pleaded indicia of a "modus operandi" that would suggest a threat that the acts of racketeering—fraudulent misrepresentations toward procuring one license—would inevitably continue in future venues or projects. SSR therefore cannot set forth the open-ended continuity necessary to constitute a pattern of racketeering activity.

Finally, SSR claims that Wynn Resorts and Wynn MA's fraudulent concealment automatically continued into the future because, if the MGC had ever found out about any of the alleged past misdeeds of Wynn MA or Wynn Resorts, it would have taken away Wynn MA's gaming license. Doc. 98 at 70 ("they were at risk of losing the License at any moment if their continuing unsuitability were exposed"). SSR cites only *Feinstein* for the proposition that a continuing concealment of fraud is sufficient to demonstrate open-ended continuity, but *Feinstein* held only that the plaintiff had *failed* to allege a pattern of racketeering activity. 942

F.2d at 46. SSR's tortured reading of *Feinstein* rests on a citation to the court's mention of a series of arguments that plaintiff was *not* making, and which the court therefore never addressed. *Feinstein*, 942 F.2d at 46 ("There is no assertion that these communications . . . served to perpetuate or conceal the fraud."). Looking beyond this dicta, other courts *have* directly addressed the question and held that ongoing concealment of a fraud does not alone create open-ended continuity sufficient to set forth an actionable pattern. As the Court in *Ruby Dev. Corp. v. Charrim Dev. Corp.*, 742 F. Supp. 1213, 1217 (E.D.N.Y. 1990) stated, "it is not sufficient to claim that allegations of concealment on the part of a wrongdoer constitute a basis for establishing an open-ended scheme or threat of repetition to satisfy the continuity requirement. Otherwise every past act of wrongdoing which a wrongdoer attempts to conceal might be the basis for finding continuity." *See Bowdoin Constr. Corp. v. Rhode Island Hosp. Trust Nat'l Bank, N.A.*, 869 F. Supp. 1004, 1010-1011 (D.Mass. 1994) (finding no pattern of racketeering activity where "[a]ll alleged acts revolve around the perpetration and concealment of an allegedly fraudulent arrangement for the renovation of the Sea Crest hotel."); *see also Giuliano v. Fulton*, 399 F.3d 381, 389 (1st Cir. 2005) ("a proposed or anticipated fraudulent act cannot be counted as a predicate act in furtherance of a closed-ended racketeering scheme").

    **C.**    **Both of SSR's RICO Counts Fail to Allege an "Enterprise" Distinct from the Defendant Persons.**

SSR claims that *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001) supports its argument that the "enterprise" alleged in its Second Claim, Wynn MA, is distinct from the defendant "persons," Wynn Resorts, Stephen Wynn, Kimmarie Sinatra, and Matthew Maddox. Doc. 98 at 43. Yet, *Kushner* simply held that a corporation may constitute an enterprise distinct from a natural person even if the natural person is the sole shareholder of the corporation. *Id.* at 160. That *Kushner* configuration is very different, however, from the one set out in SSR's

Second Claim, in which the alleged "enterprise" is a subsidiary (Wynn MA) and the defendant "persons" are the parent corporation (Wynn Resorts) and individuals who are officers of both the parent corporation and the subsidiary corporation (Mr. Wynn, Ms. Sinatra, and Mr. Maddox).

Instead, SSR's configuration is far more analogous to the ones rejected in cases like *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996). In *Discon*, the court held that a parent corporation was not an enterprise distinct from that corporation's wholly-owned subsidiary, particularly where that subsidiary was "acting within the scope of a single corporate culture, guided by a single corporate consciousness." *Id.* at 1064. This dispositive inquiry—whether the entity alleged as the "person" is part of the same corporate culture and was guided by the same corporate consciousness as the entity alleged as the "enterprise"—was endorsed in *Kushner* and remains good law. Accordingly, in one apt post-*Kushner* case, *U1It4Less, Inc. v. FedEx Corp.*, 871 F.3d 199, (2d Cir. 2017), the court found no person/enterprise distinction because the corporations alleged as "persons" and the corporation alleged as the "enterprise" had a "unified corporate structure guided by a single corporate consciousness." *Id.* at 207.

On this same rationale, courts consistently have found no person/enterprise distinction where the "enterprise" is a corporation and the defendant "persons" are officers carrying on the regular business of that corporation. *Riverwoods Chappaqua Corp. v. Marine Midland Bank*, 30 F.3d 339 (2d Cir. 1994). Similarly here, because the defendant officers of Wynn Resorts and Wynn MA are alleged to have operated a wholly-owned subsidiary solely by alleged actions taken in their official capacities, there can be no person/enterprise distinction as a well-established matter of pre- and post- *Kushner* law.

Further, the Opposition offers nothing to demonstrate how SSR's First Claim—which alleges that all of the defendants operated an "association in fact" also consisting of all of the

9

defendants—sets forth a distinct "enterprise." While citing to cases where there were at least some differences between the respective groups of "persons" and "enterprise" members, SSR cites to *none* which have found requisite distinction in the configuration on which the First Claim rests—*complete* identity between the two groups. Doc. 98 at 39-42. Indeed, in *Atlas Pile Driving Co. v. DiCon Fin. Co.*, 886 F.2d 986, 995 (8th Cir. 1989), a case cited by SSR, the Eighth Circuit found the requisite person/enterprise distinction only because "the enterprise [an association-in-fact of five entities] and the person [two of the five entities] are *not* identical." (emphasis added). SSR's First Claim fatally offers no such distinction.

Finally, to properly plead an "association-in-fact" such as that proffered in its First Claim, SSR must allege more than that all of the defendant "persons" came together to conduct themselves simply to accomplish the predicate acts which brought them together; SSR must allege "an organizational pattern or system of authority beyond what was necessary to perpetrate the predicate crimes." *Atlas Pile Driving Co. v. Di Con Financial Co.*, 886 F.2d 986, 996 (8th Cir. 1989) (internal quotations and citations omitted); *see United States v. Bledsoe*, 674 F.2d 647, 664 (8th Cir. 1982) ("under RICO, an enterprise cannot simply be the undertaking of the acts of racketeering, neither can it be the minimal association which surrounds these acts."). In its First Claim, however, SSR has not alleged any association between FBT, Wynn MA, and Wynn Resorts, beyond the minimal collaboration needed to accomplish the fleeting singular purpose of allegedly defrauding the MGC. The First Claim therefore fails for lack of this enterprise/acts distinction as well.

### D. SSR's Alleged Injury Was Not Proximately Caused by Wynn Resorts' or Wynn MA's Alleged Racketeering Acts.

The Opposition incorrectly states that Wynn Resorts and Wynn MA have argued "no one other than the defrauded agency [MGC] has a potential claim against the fraudster [Wynn]."

Doc. 98 at 27.  Wynn Resorts and Wynn MA have not urged any such requirement, Doc. 76 at 19; indeed, they agree with SSR that first-party reliance is not required to show that a defendant's fraud proximately caused a plaintiff's harm.  *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 657-658 (2008); *In re Celexa & Lexapro Marketing & Sales Practices Litig.*, 915 F.3d 1, 14 (1st Cir. 2019).

Rather, Wynn Resorts and Wynn MA have argued that SSR's alleged injury—its purported loss of possible rental income—is too attenuated from Wynn MA's or Wynn Resorts' wrongful acts of fraud on the MGC to confer standing, ***whether or not*** SSR itself relied on any alleged misrepresentations.  Doc. 76 at 19-20.  Because SSR's speculative injury is several causal steps removed from any alleged fraud on the MGC, SSR has no standing to claim that its harm was proximately caused by any RICO violation.  Doc. 76 at 19-24.  And significantly, SSR has acknowledged the factual bases of Wynn Resorts and Wynn MA's argument, agreeing that ***only*** MSM was the applicant which lost to Wynn MA, Doc. 98 at 22-23, 33, and that SSR's hoped-for revenue as a prospective landlord of MSM would flow ***only*** if MSM chose not to take advantage of several "standard outs" at its disposal under its proposed lease with SSR, Doc. 98 at 34, n.13.

Still, SSR argues that, no matter how remote its injury may be from the alleged fraud, where there is a "zero-sum situation where only one License could or would be awarded," the losing bidder is directly harmed by the winner's fraud.  Doc. 98 at 29.  But the ***sole*** case that SSR relies on to support this "zero-sum" theory of causation—*Bridge*, 553 U.S. at 657-658—does not stand for that proposition.  The holding of *Bridge* was that proximate cause does not require first-party reliance; a point which, as noted, Wynn Resorts and Wynn MA do not contest.  553 U.S. at 657-658.

Moreover, the factual allegations of SSR's case are entirely distinguishable from those in *Bridge*. In *Bridge*, the plaintiff competitor was denied a ***guaranteed*** opportunity to purchase the auctioned liens when the defendant fraudulently obtained more than its statutorily-allotted share of a finite number of those purchasing opportunities. *Id.* at 643-644. The Court therefore found a "sufficiently direct relationship" between the alleged misconduct and injury. *Id.* at 657. But there is no such direct causal connection alleged here. First, it bears emphasis that SSR was ***not a competing applicant***. For that reason alone, the comparison to *Bridge* is inapt. Second, even if SSR had been a co-applicant with MSM, SSR makes too many unsupported assumptions in its claim that it would have been awarded the license if Wynn MA had been found "not suitable." As the relevant regulatory scheme provides, even if Wynn MA had been found not suitable at Phase I, any number of things may have happened: (a) the MGC may have called for more applicants and may have chosen one of those other applicants, *see generally* G.L. c. 23K; (b) the MGC may have decided to award no license at all in Region A, G.L. c. 23K §19(a); or (c) the MGC may have allowed Wynn MA a chance to correct the issues that had made it unsuitable. There is of course no way of knowing which of these possibilities would have occurred, and guessing amidst such uncertainty is precisely what the proximate cause requirement is designed to preclude.[5/]

---

[5/] Other cases that SSR cites while attempting to save its proximate cause argument are similarly distinguishable from this case. *See e.g., In re Neurontin Marketing & Sales Practice Litig.*, 712 F.3d 21, 37 (1st Cir. 2013) (holding that Kaiser's injury was proximately caused by Pfizer's fraud because Kaiser was "a primary and intended victim."). But here, SSR could not have been a primary or intended victim of Wynn's alleged fraud, because, as SSR admits, Mohegan Sun was the competing applicant, not SSR. Doc. 98 at 22; Ex. 76-5 at 2, 8.

For the foregoing reasons and those set forth in their Memorandum in Support, defendants Wynn Resorts and Wynn MA respectfully request that the Court grant their Motion to Dismiss with prejudice.

Dated:  April 24, 2019

Respectfully Submitted,

WYNN RESORTS, LTD and WYNN MA, LLC

By their counsel,

/s/ Peter A. Biagetti
Peter A. Biagetti, BBO # 042310
Samuel M. Starr, BBO # 477353
Mintz, Levin, Cohn, Ferris,
     Glovsky & Popeo, P.C.
One Financial Center
Boston, MA 02111
Phone: 617.542.6000
Fax: 617.542.2241
PABiagetti@mintz.com
TStarr@mintz.com

Mark Holscher (*admitted pro hac vice*)
Kirkland & Ellis LLP
333 South Hope Street
Los Angeles, CA 90071
Phone: 213-680-8190
Fax: 213-808-8097
Mark.holscher@kirkland.com

## **CERTIFICATE OF SERVICE**

   I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants and by mail as identified on the Notice of Electronic Filing on April 24, 2019.

Christine Hanley
Douglas H. Meal
James N. Kramer
Michael Todd Scott
Orrick, Herrington & Sutcliffe LLP
Suite 5600
701 5th Avenue
Seattle, WA 98104
dmeal@orrick.com

Mark Holscher (*admitted pro hac vice*)
Kirkland & Ellis LLP
333 South Hope Street
Los Angeles, CA 90071
Phone: 213-680-8190
Fax: 213-808-8097
Mark.holscher@kirkland.com

            /s/ Peter A. Biagetti
            Peter A. Biagetti