# Zalkind Duncan & Bernstein LLP

ATTORNEYS AT LAW

Norman S. Zalkind
David Duncan
also member of PA Bar
Inga S. Bernstein
Rachel Stroup
Ruth O'Meara-Costello
Emma Quinn-Judge
Monica R. Shah
also member of NY Bar

Naomi R. Shatz
also member of NY Bar
David A. Russcol
also member of NY & DC Bars
Zoraida Fernandez
also member of CA Bar
Ana Muñoz
also member of NY & NJ Bars
Melissa Ramos

OF COUNSEL:
Elizabeth A. Lunt
Harvey A. Silverglate

May 2, 2019

**BY ECF**

The Honorable Patti B. Saris
United States District Court
District of Massachusetts
One Courthouse Way
Boston, MA  02210

RE:   *Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd., et al.*,
       Docket No. 18-cv-11963-PBS

Dear Chief Judge Saris,

        We are writing to bring to your attention the *Decision and Order Regarding Suitability of Wynn Resorts Ltd. and Wynn MA, LLC* (Decision) issued on Tuesday April 30, 2019 by the Massachusetts Gaming Commission (MGC or Commission) and to provide you with a copy of that Decision, some or all of which may be subject to judicial notice, so that it may to the extent appropriate be considered part of the record on the pending motions.  The Decision dealt with the failure of the related Wynn defendants to disclose Steve Wynn's long history of sexual abuse of employees. We will be prepared to address at oral argument, and if the court desires or permits, in supplemental briefing, the full significance of this Decision.

        The Decision came about after the MGC had its Investigations and Enforcement Bureau (IEB) undertake an investigation into Defendant Wynn MA, LLC, and various of its current and former affiliates (including the rest of the Wynn Defendants as defined in the FAC). The investigation was not triggered by any disclosure by any Wynn Defendants or affiliate, but rather by the publication of an article in the *Wall Street Journal* in January of 2018 detailing a multitude of workplace sexual harassment and sexual misconduct allegations made against defendant Steve Wynn.  That investigation resulted in a 199-page Investigative Report by the IEB produced in March 2019 (submitted in the form then publicly available as an exhibit with our consolidated opposition brief, doc. No. 98-2), which was followed by a 3-day evidentiary hearing in April 2019 before the MGC.[1]  The FAC alleges multiple other areas of misconduct (and deceit of the Commission regarding that misconduct, thereby causing damage to plaintiff) as part of the factual grounds for its claims for relief, and the investigation and Decision do not address those other areas of misconduct.

---

[1] Not all of the exhibits and other documents on which the Commission based its findings are yet publicly available, but plaintiff is exercising its rights under the Massachusetts Public Record Law to obtain them.

Letter to Chief Judge Saris
May 2, 2019
Page 2

While the Commission found that "there is no substantial evidence that [the Wynn Companies or its qualifiers] *willfully* provided false or misleading information to the Commission" with respect to the Wynn sexual harassment and abuse allegations as it sought its license (Decision at 17, emphasis added) it found that the legal standard involved in this assessment placed the "affirmative obligation [on the IEB] to establish by substantial evidence the lack of clear and convincing evidence that the gaming licensee or qualifier remains suitable." Id. at 16 (quoting 205 CMR 114.01(4). In contrast, "[a]n applicant for a gaming license, and any person required by the commission to be qualified for licensure, shall establish its individual qualifications for licensure to the commission by clear and convincing evidence." M.G.L. c. 23K, § 13(a). In short, the Commission was hamstrung by the fact that it now had the heavier burden. Notwithstanding, the Decision provides compelling support for the allegations of the FAC.

In the Decision, the Commission imposed a $35,000,000 fine, the intent of which was "to penalize the Company for systemic failures … and to deter future violations." Id. at 49-50. That fine is substantially larger than the $20 million fine imposed for the same pattern of misconduct by the Nevada Gaming Control Board, which was itself reportedly the largest regulatory sanction levied against a casino operator in Nevada history. The MGC wrote: "To be clear, the fine is based on acts and omissions that occurred from the moment the Company first availed itself of the Commission's jurisdiction through to the present." Id. at 50. The Commission also mandated the appointment of an independent monitor for the Company to be in place for a period of five years, a sanction potentially unprecedented in the history of American casino regulation. Id. at 50-51. An additional $500,000 fine was imposed on CEO Matthew Maddox, one of the defendants herein, whom a minority of members of the Commission would have found unsuitable for continued employment. Id. at 52.

The Commission made clear it was not addressing what it might have done had the information only recently uncovered been disclosed during the licensing process, stating:

> There is no way for the Commission to definitively determine whether the Company would have been deemed unsuitable at a particular point in time between 2013 and the present. There is also no way for the Commission to determine what steps the Company might have taken in 2013 to address these matters if the information had been disclosed. Given that, the Commission here focuses on whether the Company is suitable today.

(Decision at 38.) Thus, the Commission, given its regulatory focus on the current situation and the future prospects of its licensee, which has now undergone massive turnover in its senior management team, decided it did not need to adjudicate one of the core questions presented in this civil action, namely whether the licensing decisions made in 2013 and 2014 which favored defendants and injured plaintiff would have come out differently had the Commission known the true facts. But, the Commission was obviously so concerned about the potential for future wrongdoing that it required imposing an independent monitor.

Letter to Chief Judge Saris
May 2, 2019
Page 3

The Decision took special notice of defendant Sinatra's failure to make disclosure. In assessing one crucial decision not to provide the Commission with materials requested of the Company in an email sent by an agent of the Commission to defendant Sinatra, the Commission found the refusal to disclose to be based on an "an overly narrow interpretation" of the request and went on to state that "it is difficult to fathom why the existence of the allegations and settlements was not disclosed to the Commission in 2013 and 2014 during the RFA-1 and RFA-2 reviews." Id. at 19. It also observed:

> The 2014 Abbott memo [which consisted of an outside counsel's report about allegations made at an EEOC mediation that Mr. Wynn had, in 2005, raped a company employee who worked as a cocktail server] is dated June 27, 2014. The vote to award the Category 1 license in Region A to Wynn MA, LLC took place on September 16, 2014. Ms. Sinatra, who was intimately involved with the licensing process, denied being aware of the allegations contained the Abbott memo despite being forwarded a copy to her Company email address and having responded to that email. … The Commission is inclined to conclude that her denial was motivated by self-preservation given the proximity of the issuance of the memo to the licensing decision.

Id. at 19 n.15 and 7. The Commission continued: "the Commission found nothing in the record to support Sinatra's denial and was unable to elicit further explanation from her given that she declined to appear at the hearing despite receiving a subpoena and declined the Commission's follow-up request to appear following the conclusion of the adjudicatory hearing." Id. at 19 n.15.

Nor was the allegation in the Abbott memo the only information Ms. Sinatra (and others) failed to disclose to the MGC at the suitability phase or thereafter. According to Elaine Wynn (not a named party but now the board chair of defendant Wynn Resorts following the management shakeup and the exit of Steve Wynn and Ms. Sinatra from the Company), in 2009 she learned of an allegation made by a Wynn Las Vegas manicurist that Mr. Wynn had raped her and that she was pregnant by him in 2005, allegations that were settled "within days" with a $7.5 million settlement. (To be clear, this is a different 2005 rape allegation than the one discussed in the 2014 Abbott memo.) Mrs. Wynn reported this allegation and settlement to Ms. Sinatra. Id. at 6-7, 4-5. Steve Wynn funneled that hush-money settlement through a shell entity that the Commission considered "a prime example of a concerted effort to ensure that the 2005 settlement would not be discovered by, among others, regulators." Id. at 20.

Based on these facts and many others detailed in the Decision, tellingly, the Commission wrote:

> We need not spend time describing why it was essential that Mr. Wynn, Ms. Sinatra, Mr. Tourek, and Mr. Wooden be purged from the Company. Certainly, their continued employment would make a finding that the Company possesses the requisite integrity, honesty, good character, and reputation exceedingly difficult to impossible, but they have been removed so we will not toil over the point.

Letter to Chief Judge Saris
May 2, 2019
Page 4

Id. at 41.

We look forward to addressing this further at the oral argument.

Respectfully submitted,

_____
Inga S. Bernstein

_____
Steven Storch
Storch Amini PC
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, NY 10017

enc

cc: All counsel (via ECF)